84 N.J. Super. 569 (1964)
202 A.2d 889
WAYNE B. KOLBECK BY WALTER A. KOLBECK, SR., GUARDIAN AD LITEM, PLAINTIFF,
v.
GEORGE A. KRAMER, MASON W. GROSS, PHILIP B. BEWLEY, RUTGERS, THE STATE UNIVERSITY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 23, 1964.
*570 Mr. Charles Crabbe Thomas, attorney for plaintiff.
Messrs. R.E. & A.D. Watson (Mr. Russell E. Watson, appearing), attorneys for defendants.
MARTINO, J.S.C.
This is an action in lieu of prerogative writ brought by Wayne Bruce Kolbeck, through his father, Walter A. Kolbeck, as guardian ad litem. Plaintiff applied to and was accepted by Rutgers, the State University, for the September 1962 term. While in the process of registration the Student Health Department of Rutgers sought to make certain medical tests. Plaintiff refused to submit to such tests alleging that such practices were violative of his religious principles and beliefs. The university supplied the plaintiff with a printed form which allows a claim for exemption on the basis of religious belief which included a certification that the person seeking the exemption was a member of the Christian Science faith. Plaintiff contends that while his refusal is based on religious belief, he is not a member of any recognized sect or religion. Those charged with admission have refused his right to matriculate since they have concluded that his reason for refusal to submit to the medical tests is not based on a bona fide claim of religious belief. This suit seeks relief by an order on defendant university to admit the plaintiff.
*571 It is conceded that the defendant university is a political subdivision of the State of New Jersey. N.J.S.A. 18:22-15.1. The defendant university is subject to the rulings and regulations as promulgated by the State Board of Education. N.J.S.A. 18:22-15.57. Since Rutgers University is bound by the regulations and rules of the State Board of Education, any requirement or ruling formulated by the university as to exemptions must be examined in the context of their compliance with those regulations.
The powers of the State Board of Education are provided for by statute. The board is generally charged with the duty to enforce the school laws of the State and generally make such regulations as are necessary to implement the statutes. N.J.S.A. 18:2-4(b). This duty is carried out generally through the principal education officer of the State, the Commissioner of Education, whose powers in this respect are governed by N.J.S.A. 18:3-7.1. Since neither plaintiff nor defendant has cited any specific regulation or regulations of the Board of Education, the instant case is to be governed by the applicable statutes. Generally the statutes require that pupils undergo: physical examination, N.J.S.A. 18:14-57; general vaccination, N.J.S.A. 18:14-52; diphtheria immunization, N.J.S.A. 18:14-64.2; polio immunization, N.J.S.A. 18:14-64.10, and tuberculosis tests, N.J.S.A. 18:14-64.5.
It is beyond dispute that the State, through the Board of Education, could make the above requirements mandatory as to all pupils without exemptions based on religious beliefs or principles and such would be valid by constitutional standards as a reasonable exercise of the police power. Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1904); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1943); Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946); Mountain Lakes Board of Education v. Maas, 56 N.J. Super. 245 (App. Div. 1959), affirmed per curiam 31 N.J. 537 (1960), certiorari denied 363 U.S. 843, 80 S.Ct. 1613, 4 L.Ed.2d 1727 *572 (1960); Sadlock v. Board of Education of Borough of Carlstadt, 137 N.J.L. 85 (Sup. Ct. 1948).
The only statutory obligation the defendant university desires plaintiff to comply with is the statute which requires a vaccination. N.J.S.A. 18:14-52. The plaintiff's objection to this test, according to his testimony which was corroborated by his parents and an older brother, is based on his religious belief that such practice violates the religious teachings which he has practiced for many years. The testimony of the plaintiff and his family indicates that they believe that it was God's Word or belief in God that would keep them healthy. The plaintiff testified that his parents brought him up in the belief that God was the ultimate healer and that "God made man in His own form and that God would protect him and, if any illness came, the only way he could be healed would be to communicate with Him and ask Him to heal."
Neither the plaintiff nor any members of his family have ever consulted a medical doctor and on two occasions the plaintiff has refused vaccinations required by other school authorities. In the elementary school at Hainesport, the mother testified that she refused to have her son vaccinated and she was forced to take him out of school, but after a few days the school authorities advised her that he could return. Upon his entrance into Moorestown High School, which he attended for four years, the mother had received a notice that her son should be inoculated for polio, smallpox and tetanus and when she notified the high school authorities that it was against her religious beliefs to permit such inoculations she was forced to have the plaintiff taken from school, but after a short period the authorities relented and permitted him to complete his high school education without inoculations. It, therefore, appears that the authorities controlling admissions in the elementary and high school systems accepted the plaintiff's faith and waived the requirements of the statutes.
The defendant university would be standing on proper legal grounds to refuse his entrance, but their conduct in the case of students who profess to be members of the Christian Science *573 faith requires a further examination of their attitude and the laws which control this discriminatory conduct.
N.J.S.A. 18:14-52 which permits the defendant university to waive the vaccination requirement reads as follows:
"A board of education may exclude from school any teacher or pupil who has not been successfully vaccinated or revaccinated, unless the teacher or pupil shall present a certificate signed by the medical inspector appointed by the board of education that the teacher or pupil is an unfit subject for vaccination, but a board of education may exempt a teacher or pupil from the provisions of this section, if said teacher or the parent or guardian of said pupil objects thereto in a written statement signed by him upon the ground that the proposed vaccination interferes with the free exercise of his religious principles." (Emphasis added)
There are presently within the confines of the defendant university eight students who profess to adhere to the Christian Science faith. They have certified that they are members of that faith and the defendant university has waived the requirement of N.J.S.A. 18:14-52. This plaintiff has refused to state that he is a member of this faith since he is not. It does not appear to be disputed that if the certificate appended to the exemption certificate were to be executed by an official of the Christian Science faith the defendant university would waive the vaccination requirement. The defendant university does not believe that plaintiff's faith, as he relates it, either is a true faith or that he actually has such a faith.
What is a true faith? What is religion?
"The term `religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will. It is often confounded with the cultus or form of worship of a particular sect, but is distinguishable from the latter. The first amendment to the constitution, in declaring that congress shall make no law respecting the establishment of religion or forbidding the free exercise thereof, was intended to allow every one under the jurisdiction of the United States to entertain such notions respecting his relations to his Maker and the duties they impose as may be approved by his judgment and conscience, and to exhibit his sentiments in such form of worship as he may think proper, not injurious to the equal rights of others, and *574 to prohibit legislation for the support of any religious tenets, or the modes of worship of any sect." Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637 (1890).
There is no right in a state or an instrumentality thereof to determine that a cause is not a religious one. Such a censorship of religion as the means of determining its right to survive is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).
It is significant that N.J.S.A. 18:14-52 doth not require membership in a recognized religious sect or faith. Thus, by applying normal rules of statutory construction we may reasonably infer that the Legislature did not intend such a requirement. Further, since we have determined that the university may not act in opposition to the rulings and interpretations of the State Board of Education, we must look to the rulings and policies of the State Board of Education as to the granting of exemptions. Construing the language of the statutes as to religious belief, the Commissioner has unequivocally ruled that membership in a recognized religious group cannot be required as a condition of exemption from immunization or examination. Ruling of the Commissioner of Education, Kassner v. Board of Education of Berlin, November 9, 1960. Indeed, such a conclusion is properly the only constitutionally permissible one with respect to Article I, paragraphs 3, 4 and 5 of the New Jersey Constitution, although the Commissioner decided that case on the basis of legislative intent.
While it is true that all Christian Scientists may be entitled to an exemption, all those who are entitled to exemptions need not be Christian Scientists. Of course, every Christian Scientist would be entitled to an exemption only if the defendant university, in exercising the discretion granted to it by statute, so decided.
*575 In Mountain Lakes Board of Education v. Mass, supra, the court in approving the action of the Board of Education in barring admission for failure to be inoculated for religious reasons, noted:
"* * * [N]o exemption was granted on religious grounds to some and not to others; all parties similarly situated were always treated alike. We are entirely convinced that the board, in its approach to public health measures, comprehensively considered and consistently adhered to a complete prevention method in dealing with school children committed to its care."
Defendant argues in its brief that if the plaintiff's contentions are upheld, "Rutgers is helpless in protecting the health of its students, administrative staff and faculty," and the same brief concedes that eight bona fide Christian Scientists are presently enrolled in the student body. While it is conceded that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State, how can it be argued that people of one faith are less able to communicate disease than those of another?
In United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944), the Court noted:
"The First Amendment has a dual aspect. It not only `forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship' but also `safeguards the free exercise of the chosen form of religion.' * * * Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views. The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When the triers of fact undertake that task, they enter a forbidden domain. The First Amendment does not select any one group or any one type of religion for preferred treatment. It puts them all in that position."
The State or any instrumentality thereof cannot, under any circumstances, show a preference of one religion over *576 another. Such favoritism cannot be tolerated and must be disapproved as a clear violation of the Bills of Rights of our Constitutions. Tudor v. Board of Education of Borough of Rutherford, 14 N.J. 31 (1953).
"Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947).
When the plaintiff indicated he had religious beliefs which would be violated by submitting to a vaccination, the defendant university, through its proper authorities, handed him a printed certificate, which in addition to a request that he be exempted from vaccination upon religious grounds also contained a certificate to be executed by an official of the Christian Science faith certifying that the plaintiff was a member in good standing of that church and a student of Christian Science. The policy of recommending or suggesting a religion to a person who professes a different religion is contrary to the law of this land. The suggestion that plaintiff does not have a bona fide religion to qualify for this exemption, in view of the facts and the law on this question, indicates an arbitrary and capricious policy for a State University. There is no right on the part of a political subdivision of a State to take discriminate action against a person in reference to his religious views. Membership in a recognized religious group cannot be required as a condition of exemption from vaccination under statute and constitutional law.
It is undisputed that the plaintiff qualifies for enrollment in every other respect and the defendant University, therefore, is directed, through the proper officers, to admit the plaintiff.