KLEID, Louis E., et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF the FULTON, KENTUCKY, INDEPENDENT SCHOOL DISTRICT and L. C. Thomas, Superintendent of Schools of the Fulton, Kentucky, Independent School District, Defendants.**

Civ. A. No. 75–0003–P(G).

United States District Court, W. D. Kentucky, Paducah Division.

Jan. 26, 1976.

Joseph S. Freeland, Paducah, Ky., for plaintiffs.

Hunter Whitesell, Fulton, Ky., Carl Miller, Asst. Atty. Gen., Frankfort, Ky., for defendants.

Before LIVELY, Circuit Judge, and ALLEN and GORDON, District Judges.

### MEMORANDUM OPINION AND ORDER

JAMES F. GORDON, Senior District Judge.

Plaintiffs Louis and Bonita Kleid, husband and wife, are the stepfather and

1. Without prejudice to the rights of any of the parties an agreed order was signed permitting the children to attend school until this action was decided.

2. K.R.S. 158.035 states: Except as otherwise provided in KRS 214.036, no child shall be eligible to enroll as a student in any public or private elementary or secondary school without first presenting a certificate from a duly licensed medical or osteopathic physician stating that the child has been immunized against diphtheria, tetanus, poliomyelitis, and measles in accordance with the provisions of this section and KRS 214.010, 214.020, 214.032 to 214.036, and 214.990 and the regulations of the Secretary for Human Resources. The governing body of private and public schools shall enforce the provisions of this section.

3. K.R.S. 214.036 states: Nothing contained in KRS 158.035, 214.010, 214.020, 214.032 to

natural mother of plaintiffs Kris and Scott Porter. Kris, age fifteen, and Scott, age eleven, attend school in the Independent School District in Fulton, Kentucky.

Louis Kleid is a chiropractor. Because of his professional training he is "philosophically opposed to the practice of so-called immunization of the human body against disease by inoculation or other administration of serums or other substances derived from bacterial or viral sources." Bonita Kleid shares her husband's belief.

The Superintendent of the Independent School District in Fulton, Kentucky had notified Louis Kleid by letter dated December 10, 1974, that if Kris and Scott were not immunized against certain diseases, as required by Kentucky statutes, the children would not be permitted to enroll in the school system for the second semester of school year 1974–75, nor presumably thereafter.[1]

On January 6, 1975, the plaintiffs filed their complaint which alleges that sections 158.035[2] and 214.036[3] of the Kentucky Revised Statutes, when construed together, violate the Establishment Clause of the First Amendment. On January 13, a three-judge panel was convened to decide the controversy. Since the facts in this action are not in dispute, the Court does not believe an oral hearing is required. The case is now before us on the defendants' motion to

214.036 and 214.990 shall be construed to require the immunization of any child at a time when, in the written opinion of his attending physician, such immunization would be injurious to the child's health. Nor shall KRS 158.-035, 214.010, 214.020, 214.032 to 214.036 and 214.990 be construed to require the immunization of any child whose parents are members of a nationally recognized and established church or religious denomination, the teachings of which are opposed to medical immunization against disease, and who object in writing to the immunization of such child on that ground. Provided, however, that in the event of an epidemic in a given area, the Department for Human Resources may, by emergency regulation, require the immunization of all persons within the area of epidemic against the disease responsible for such epidemic.

dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6).

Plaintiffs set forth their First Amendment argument, as follows[4]:

> [A] state statute which confers an exemption or other privilege upon "members of a nationally recognized and established church or religious denomination, the teachings of which are opposed to medical immunization against disease," while denying it to those who oppose immunization upon non-religious grounds, effects an establishment of religion which is unconstitutional under the First and Fourteenth Amendments.

▇▇▇ We agree with plaintiffs that the Establishment Clause has been made applicable to the states and to subdivisions thereof, including a county board of education, via the Fourteenth Amendment. *Williams v. Board of Education of County of Kanawha,* 388 F.Supp. 93, 96 (S.D.W.Va.1975) (and cases cited therein). Yet, we do not agree that K.R.S. 158.035 and 214.036, when construed together, violate the Establishment Clause of the First Amendment.

Three statutes are important in this action. Although plaintiffs only question the constitutionality of K.R.S. 158.-035 and 214.036, we believe a third statute, K.R.S. 214.034[5], must be considered in our analysis to insure a proper decision in this case.

When K.R.S. 158.035, 214.034 and 214.-036 are construed together the effect of these statutes is singular: An immunization program has been established in Kentucky. The Kentucky General Assembly has mandated that all children residing in the Commonwealth and attending any public or private elementary or secondary school in Kentucky shall be immunized against certain dreadful diseases except in those limited instances covered under K.R.S. 214.036. In other words K.R.S. 214.034 requires all Kentucky children to be immunized against the diseases listed therein; K.R.S. 158.-035 is, in effect, a monitoring device for K.R.S. 214.034 since it provides an effective method by which Kentucky officials can insure that parents are complying with K.R.S. 214.034[6]; and K.R.S. 214.036 merely allows certain exceptions to the rules already set forth in K.R.S. 158.035 and 214.034. In short, we do not believe K.R.S. 158.035, 214.034 or 214.036 can be read in a vacuum. These statutes must be read and construed together since they are parts of a combined legislative program aimed at improving the health of the citizens of Kentucky.

The question becomes: Do K.R.S. 158.-035 and 214.036, when construed together, violate the Establishment Clause? For several decades the Supreme Court has labored to set forth an understandable and concise test, yet, a test which is flexible enough to be applied in most cases where government action is challenged as violative of the constitutional prohibition against laws "respecting an establishment of religion." Eventually, a three tier test evolved which is now generally applied in Establishment Clause cases. *E. g., Committee For Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 772–773, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973). Recently, the Supreme Court has reaffirmed this

---

**4.** *Plaintiffs' Response to Motion to Dismiss* at 3.

**5.** K.R.S. 214.034 states: Except as otherwise provided in KRS 214.036, all parents, guardians, and other persons having care, custody or control of any child shall have the child immunized against diphtheria, tetanus, poliomyelitis, pertussis, and measles in accordance with immunization schedules established by regulations of the Department for Human Resources. Such persons shall also have booster immunizations administered to the child in accordance with the regulations of the Department for Human Resources.

**6.** K.R.S. 158.035 does not insure full compliance with K.R.S. 214.034 since a child upon being enrolled in school is only required to present a certificate showing he has been immunized against diptheria, tetanus, poliomyelitis and measles; whereas, K.R.S. 214.034 requires immunization against these diseases plus pertussis, commonly known as whooping cough.

test. *Meek v. Pittenger,* 421 U.S. 349, 358, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975).

■ The three-part test is: First, the statute must have a secular legislative purpose; second, it must have a "primary effect" that neither advances nor inhibits religion; and, third, the statute and its administration must avoid excessive government entanglement with religion.

■ Although no legislative history accompanies the statutes in issue and counsel has not directed the Court's attention to any writings from which the General Assembly's intention as to these statutes can be gleaned, we are convinced that the legislative enactments under discussion have a secular legislative purpose. Each state has an interest in protecting the health and the physical and mental well-being of her citizens. The statutes which plaintiffs have assaulted are segments of the public health legislative program which has been enacted in Kentucky in an effort to protect the health of school age children who reside in the Commonwealth. A state legislature pursuant to its police power has the right to enact legislation which attempts to improve and protect the health and well-being of her citizens. We believe this was the legislative purpose in enacting K.R.S. 158.035, 214.034 and 214.036. Thus, the first step of the Establishment Clause test has been satisfied.

Did the enactment of K.R.S. 158.035 and 214.036 have the unconstitutional primary effect of advancing or inhibiting religion? Before a statute is declared unconstitutional under this portion of the test the *primary effect* of the legislative enactment must be to advance or inhibit a religion. Ergo, "it is clear that not all legislative programs that provide indirect or incidental benefit to a religious institution are prohibited by the Constitution." *Meek v. Pittenger, supra* at 359, 95 S.Ct. at 1760. We must decide whether the effect of the questioned statutes, and particularly K.R.S. 214.036, have as their primary effect the ad-

vancement of certain religious groups or whether these statutes, and particularly K.R.S. 214.036, create only an indirect and remote benefit to any religious group. A review of several cases which have turned on this portion of the test requires us to conclude that K.R.S. 158.-035 and 214.036 create, at best, only an indirect, incidental and remote benefit to any religious group.

An example of a case where the Supreme Court has found the unconstitutional "primary effect" is *Meek v. Pittenger, supra.* There the Court held that a Pennsylvania statute which authorized the State Secretary of Education, either directly or through the intermediate units, to lend textbooks without charge to children attending non-public elementary and secondary school to be violative of the Establishment Clause. The Court held that the nearly $12 million authorized under this statute in the 1972–73 school year "inescapably results in the direct and substantial advancement of religious activity . . . and thus constitutes an impermissible establishment of religion." *Meek v. Pittenger, supra* at 366, 95 S.Ct. at 1764.

However, in other cases even when it was determined that a religious group was receiving a certain economic benefit from the state legislation, the Court has held the statute under attack to be valid. In *Everson v. Board of Education,* 330 U.S. 1, 17, 67 S.Ct. 504, 512, 91 L.Ed. 711 (1947) the Court held the Establishment Clause did not prevent "New Jersey from spending tax-raised funds to pay the bus fares of parochial school pupils as part of a general program under which it pays the fares of pupils attending public and other schools." In *Board of Education v. Allen,* 392 U.S. 236, 243–244, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060 (1968) the Court decided New York's textbook law did not violate the Establishment Clause since the law "merely makes available to all children the benefits of a general program to lend school books free of charge. Books are furnished at the request of the pupil and ownership remains, at least technically,

in the State. Thus, no funds or books are furnished to parochial schools, and the financial benefit is to parents and children, not to schools." In *Walz v. Tax Comm'n*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), property tax exemptions for church property were held not violative of the Establishment Clause notwithstanding such exemptions relieved churches of a financial burden.

In the instant case no monetary benefit is obtained by any religious group or denomination because of K.R.S. 214.036. This statute merely allows certain parents who object to immunization against diseases because of their religious beliefs to have their child exempted from the general legislative program of immunizing school children against four diseases.

In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) the Court upheld Maryland's Sunday Closing Laws because these laws only had a remote and incidental effect advantageous to religious institutions. In other words, the "Sunday Closing Laws were sustained even though one of their undeniable effects was to render it somewhat more likely that citizens would respect religious institutions and even attend religious services." *Committee For Public Education & Religious Liberty v. Nyquist, supra,* 413 U.S. at 776, 93 S.Ct. at 2967.

*Everson, Allen, Walz* and *McGowan* all demonstrate that the Court will not strike down a legislative program which provides only an indirect and incidental benefit to a religious denomination or institution. There can be little doubt that the primary effect of immunization programs enacted by the Kentucky legislature is to improve and protect the health of Kentucky citizens. The fact that the General Assembly of Kentucky decided to exempt certain children from its immunization program if the child's parents objected to the immunization requirement because of religious beliefs is, at best, only an incidental and remote benefit to any religious group. Thus, K.R.S. 158.035 and 214.036 pass constitu-

tional muster under the "primary effect" segment of the Establishment Clause test.

Do the questioned statutes and their administration avoid excessive government entanglement with religion? We need only review a case, such as, *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) to realize K.R.S. 158.035 and 214.036 pass this portion of the three-part test. In *Lemon v. Kurtzman, supra* at 618–619, 91 S.Ct. 2105, and more recently in *Meek v. Pittenger, supra,* 421 U.S. at 369–372, 95 S.Ct. at 1765, the Court made it evident that "administrative" entanglement means a legislative program which when placed into operation would require "comprehensive, discriminatory and continuing state surveillance" to insure that the First Amendment was being respected. In this case the only state contact involved in the immunization program is a simple review of the child's immunization certificate or, if the child's parents object to the immunization requirement, a review of the written objection. This minimum state contact is directly opposite the "prophylactic [state] contacts" with religion the Court found to be intolerable in *Meek* and *Lemon*.

In addition, the Supreme Court has increasingly considered whether the legislation creates excessive "political" entanglement. In brief, the Court asks whether the statute in question "creates a serious potential for devisive conflict over the issue of aid to religion—'entanglement in the broader sense of continuing political strife.'" *Meek v. Pittenger, supra* at 372, 95 S.Ct. at 1767; *Committee for Public Education & Religious Liberty v. Nyquist, supra,* 413 U.S. at 794, 93 S.Ct. at 2955. We have previously held that the statutes attacked in this action create little "administrative" entanglement between state and religion; similarly, we believe little, if any, political entanglement between the state and religion results because of these statutes. Generally, the potential for political entanglement is greatest in those instances where a state legislature has ostensibly

made a monetary commitment to a religious group or institution. *See, e. g. Meek, supra; Nyquist, supra; Lemon, supra.* In this case the Kentucky General Assembly by enacting K.R.S. 158.035 and 214.036 did not open the public coffers to any religious group or institution. We hold that K.R.S. 158.035 and 214.036 avoid both excessive administrative entanglement and political entanglement with religion.

In sum, Mr. Jefferson stated that the purpose of the Establishment Clause was to erect a wall between church and state. We believe the Kentucky legislators who enacted K.R.S. 158.035 and 214.036 have not removed one stone nor even loosened any mortar from that constitutional wall.

Wherefore, for the foregoing reasons, it is ordered that the defendants' motion to dismiss plaintiffs' complaint be, and the same is hereby, granted.