BARBARA J. SYSKA, Individually, etc. *v.*
MONTGOMERY COUNTY BOARD OF
EDUCATION et al.

[No. 1023, September Term, 1979.]

*Decided June 10, 1980.*

The cause was argued before THOMPSON, MELVIN and MacDANIEL, JJ.

*James G. Kolb* for appellant.

*Stephen J. Sfekas, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Robert S. Bourbon* on the brief, for appellees.

MELVIN, J., delivered the opinion of the Court.

The appellant, Barbara J. Syska, is the mother of two children (Mieszko and Bogumil, ages 8 and 15, respectively, at the time of the trial below) who, in 1979, were denied admission to two Maryland schools, one private and one public, in Montgomery County. The reason Mieszko was denied admission was because he could not furnish evidence that he had been immunized against rubella (German measles). The reason Bogumil was denied admission was because he could not furnish evidence that he had been immunized against rubeola (measles).

The appellant refused to have the children inoculated. Instead, she filed a bill of complaint in the Circuit Court for Montgomery County seeking a declaration that the Maryland statute and regulations passed pursuant thereto requiring immunizations as a pre-condition to admission to school violate rights guaranteed her by the First and Fourteenth Amendments to the Constitution of the United States and by Article 36 of the Maryland Declaration of Rights. The court below (Fairbanks, J.) declared that the

questioned statute and regulations did not violate either the Federal Constitution or the Maryland Declaration of Rights and dismissed the bill of complaint. We shall affirm.

I

The statute under attack was enacted by Chapter 315, Acts 1972, formerly codified as Article 77, § 84 (Ann. Code, 1957) and now, with style changes only, as § 7-402 of the Education Article (Ann. Code, 1978). It provides as follows:

"§ 7-402. Immunizations.

(a) *Rules and regulations.* — (1) In cooperation with the State Board and the Medical and Chirurgical Faculty of Maryland, the Department of Health and Mental Hygiene shall adopt rules and regulations regarding the immunizations required of children entering schools.

(2) These rules and regulations shall:

(i) Be adopted in compliance with the Administrative Procedure Act; and

(ii) Provide that any child may have the immunization administered by his personal physician.

(b) *Exception.* — Unless the Secretary of Health and Mental Hygiene declares an emergency or an epidemic of disease, a child whose parent or guardian objects in writing to immunization on the ground that it conflicts with the tenets and practice of a recognized church or religious denomination of which he is an adherent or member may not be required to present a physician's certification of immunization to be admitted to school. (An. Code 1957, art. 77, § 84; 1978, ch. 22, § 2.)"

Pursuant to the statute, the Department of Health and Mental Hygiene adopted the following regulations:

"Title 10

DEPARTMENT OF HEALTH AND MENTAL HYGIENE

Subtitle 06 DISEASES

Chapter 04 Required Immunizations Before Entry into a Maryland School

Authority: Article 77, § 84, Annotated Code of Maryland

.01 General.

A school principal or other person in charge of a school may not knowingly admit a pupil to, or retain a pupil in, a nursery or kindergarten through the sixth grade of school, who has not furnished evidence of primary immunizations against diphtheria, tetanus, pertussis, poliomyelitis, *measles (rubeola),* and *rubella* (German measles). In addition, children in the *seventh through twelfth* grades shall furnish proof of immunity against *measles (rubeola).* Proof of immunizations will be provided in a manner approved by the local deputy State health office. The immunization will be in accordance with the current schedule of immunizations recommended by the Maryland Steering Committee on Immunization Practices of the Medical and Chirurgical Faculty of Maryland. An exception may be made for a period of 90 days in the case of a child whose parent or guardian indicates that his child is in the process of complying with these regulations and furnishes evidence of further compliance after the start of the school term or within a reasonable length of time that is consistent with the current schedule of immunizations. (Emphasis added).

.02 Medical Contraindications.

These regulations may not apply to any pupil who presents a written statement from a licensed physician or a local deputy State health officer indicating that immunization against any or all of the above mentioned diseases is considered medically contraindicated, detrimental to, or not in the best interest of the child's health. The statement shall indicate whether the contraindication is permanent or temporary. If temporary, the statement shall provide assurance that the child will receive the immunizations and furnish evidence of their completion."

## II

The appellant's quarrel with the statute and regulations is solely with the religious exemption clauses. She concedes that the State has the right under the police power, without offending constitutional proscriptions, to require immunization for the protection of the public health and safety. *See Jacobson v. Massachusetts,* 197 U.S. 11 (1905). She also seems to concede in her brief that it is constitutionally permissible "to grant an exemption on the basis of a recognized religion ... [because it] may permit immunization of as many children as possible without intruding upon earnestly held religious beliefs. . . ." She also concedes that her own objection to inoculation for her children is *not* on the ground that it conflicts with the tenets and practices of a recognized church or religious denomination of which she is "an adherent or member[1]," and she presented no statement from a licensed physician or a local health officer that immunization of either of her children "is considered medically contraindicated, detrimental to, or not in the best interest of the child's health." (See Regulation § .02).

Appellant's counsel concedes that she was "unable at trial to fully articulate the depths of her beliefs of vaccination."

---

1. Appellant is a member of the Catholic Church.

It is clear, however, that she holds no belief that vaccination *per se* is immoral or unethical, for she concedes that in 1972 she had her younger son, Mieszko, vaccinated for rubeola (measles) prior to his entry to nursery school so she could "go out and work." Her objection now seems to be based on the compulsory nature of the immunization program. She testified that it "was up to me to decide," not the State, whether to have her children vaccinated; that she "know[s] what is best for my child"; that "whenever there is any medical procedure or medical experiments, I have to choose what is best for my child"; and that she had decided that "it [is] not good for him [Mieszko]" and "not in his best interest [Bogumil]" to be vaccinated. She made that decision because of her belief that the "vaccine is much more dangerous" and that the possible "bad effects" from vaccination outweigh the benefits that would accrue to her children if they were to be vaccinated. She said she did not want her child "to be a guinea pig."

In her brief, appellant equates her beliefs and fears concerning compulsory immunization to "deeply held moral convictions" or "deep seated grounds." She argues that the religious exemption clauses of the statute and regulations "leave[s] no room for those individuals with deeply held moral convictions which must rise to the level of exercise of religion" and that "[t]he primary effect of the exemptions for religious purposes is to advance the protected religion in the eyes of the moral person who desires the exemption on deep-seated grounds, but who is unable to qualify for the exemption by reason of not being a member of the favored religion." Thus, she argues that the religious exemption clauses offend the Free Exercise and Establishment Clauses of the First Amendment by favoring "the protected religion" and also offends the Equal Protection Clause of the Fourteenth Amendment by not protecting as well what she claims to be her "deeply held moral convictions."

In effect her claim is that her beliefs and fears concerning inoculation for rubeola and rubella should be afforded the same protection as traditional religious beliefs and that not to so protect them violates the Religion Clauses of the First

Amendment to the Federal Constitution as well as the Equal Protection Clause of the Fourteenth Amendment and her Right to Privacy thereunder.

We find appellant's arguments untenable. As already noted, appellant's objections to the immunization program in this State are based on her own subjective evaluation of and rejection of the benefits to the public safety and to her children derived therefrom. Her beliefs are based on purely secular considerations; they are philosophical and personal rather than religious. Such beliefs do not rise to the demands of the Religion Clauses. As said by the Supreme Court of the United States in *Wisconsin v. Yoder,* 406 U.S. 205, 215-216 (1972):

> "A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; *to have the protection of the Religion Clauses, the claims must be rooted in religious belief.* Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, *the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.* Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. *Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses."* (Emphasis added).

As appellant's claims of denial of equal protection and invasion of privacy are predicated primarily upon the

validity of her Religion Clauses argument, they too are without merit. However, aside from the unavailability of the Religion Clauses of the Federal Constitution and the Maryland Declaration of Rights to afford appellant relief in this case, we think the answer to her equal protection and right to privacy arguments is found in the application to the facts of this case of the following principles set forth in *Jacobson v. Massachusetts, supra,* more than 75 years ago:

> "The defendant insists that his liberty is invaded when the State subjects him to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person. *But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.* There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. *Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy.* Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others. *This court has more than once recognized it as a fundamental principle that 'persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State;* of the perfect right of the legislature to do

which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned.'" *Id.* at 26. (Emphasis added).

> *Judgment affirmed; costs to be paid by appellant.*