IRVING DAVIS, SR. *v.* STATE OF MARYLAND

[No. 100, September Term, 1981.]

*Decided October 5, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Barbara Mello* and *Robert L. Beaman* for appellant.

*Henry E. Schwartz, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Randall M. Lutz, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The State of Maryland, by statute and implementing regulations, prohibits school officials from admitting pupils who have not been immunized from certain diseases, except pupils whose parents are members or adherents of a "recognized church or religious denomination" opposing immunization. The primary issue in this case is whether, in light of the exception, the immunization requirement violates the Establishment Clause of the First Amendment.

Maryland Code (1978), § 7-402 (a) of the Education Article, requires the Department of Health and Mental Hygiene to promulgate regulations regarding immunization of children entering schools.[1] Pursuant to that provision, the Department of Health and Mental Hygiene, by regulation, has provided that a school principal or other person in charge may not admit a pupil to or retain a pupil in school if the pupil has not furnished evidence of primary immunizations against specified diseases. 5 Md. Reg. 802 (1978) (proposed); 6 Md. Reg. 842 (1979) (adopted).[2]

---

1. Section 7-402 (a) provides:
   "(a) *Rules and regulations.* — (1) In cooperation with the State Board and the Medical and Chirurgical Faculty of Maryland, the Department of Health and Mental Hygiene shall adopt rules and regulations regarding the immunizations required of children entering schools.

   (2) These rules and regulations shall:

   (i) Be adopted in compliance with the Administrative Procedure Act; and

   (ii) Provide that any child may have the immunization administered by his personal physician."

2. The regulation states in pertinent part:
   "A school principal or other person in charge of a school may not knowingly admit a pupil to, or retain a pupil in, a nursery or kindergarten through the sixth grade of school, who has not furnished evidence of primary immunizations against diphtheria, tetanus, pertussis, poliomyelitis, measles (rubeola), and rubella (German measles). In addition, children in the seventh through twelfth grades shall furnish proof of immunity against measles

Section 7-402 (b) of the Education Article, however, contains an exception to the immunization requirement which reads as follows (emphasis added):

"Unless the Secretary of Health and Mental Hygiene declares an emergency or an epidemic of disease, a child whose parent or guardian objects in writing to immunization on the ground that it conflicts with the *tenets and practice of a recognized church or religious denomination of which he is an adherent or member* may not be required to present a physician's certification of immunization to be admitted to school."

By regulation, the Department of Health and Mental Hygiene has purported to limit further the exemption to "a member" of a recognized church or religious denomination, excluding one who is merely an "adherent." [3] The Immunization Program Coordinator for the Department of Health and Mental Hygiene testified in the court below as to the Department's definition of a "recognized" religion. He formulated these guidelines on his own because neither § 7-402 nor the implementing regulations contain any standards. According to the coordinator

"[a] [p]erson must be a member of a church, first of all. And that church must have a belief which prohibits immunization . . . .

_____

(rubeola). Proof of immunizations will be provided in a manner approved by the local deputy State health officer. The immunization will be in accordance with the current schedule of immunizations recommended by the Maryland Steering Committee on Immunization Practices of the Medical and Chirurgical Faculty of Maryland."

**3.** The Code of Maryland Regulations, § 10.06.04.03 (Supp. 2, 1980) provides as follows (emphasis added):

".03 Religious Conflict.

Any parent or guardian who presents a written statement of objection to immunizations upon the grounds that they conflict with the tenets or practices of a recognized church or religious denomination *of which he is a member* may not be required to present a physician's certificate of immunization. This exception will not apply in case of an emergency or epidemic of disease which is declared by the Secretary of Health and Mental Hygiene."

"[I]t's more of a subjective evaluation than having written criteria for the establishment of a church. But, basically, it's in a traditional sense of a church in that there is a congregation, there's a meeting place, there is a religious leader, there's religious instruction, there is beliefs, tenets, laws, maybe even a membership in an ecclesiastical denomination. That type of thing."

The record discloses that the Department of Health and Mental Hygiene has recognized only two religious groups as qualifying for the exemption: the Worldwide Church of God and the Church of Christ Scientist.

The petitioner Davis has an eight-year-old son, Irving Davis, Jr., who has not received the required immunizations. Pursuant to § 7-402 of the Education Article, Davis made a request to the Department of Health and Mental Hygiene for an exemption for his son, on the ground that his religious beliefs prohibited immunization. He initially had claimed that his son's immunization would conflict with the tenets of the American Natural Hygiene Society; he later changed his claim to allege a conflict with the tenets of the Church of Human Life Science. Subsequently, however, Davis disaffirmed his earlier reasons and rested his objection on his personal religious views rather than the tenets of any recognized church or religious denomination of which he was a member or adherent. Whatever Davis's claimed reasons, the Department of Health and Mental Hygiene found them insufficient to warrant an exemption from immunization because Davis was not a member of a "recognized" church or religious denomination with beliefs prohibiting immunization.

Davis attempted on several occasions to enroll his son in elementary school. Each time, after consulting with the Department of Health and Mental Hygiene, school officials refused to enroll Davis's son. The grounds for refusal were that Davis had neither furnished proof that Irving Jr. had received "primary immunizations against diphtheria, tetanus, pertussis, poliomyelitis, measles (rubeola), and

rubella (German measles)," nor qualified for the exemption from the immunization requirement.

The instant case began when Davis was charged in the District Court of Maryland, sitting in Cecil County, with truancy in violation of Code (1978), § 7-301 of the Education Article, in that he "did unlawfully cause or permit [his] minor child . . . to remain away from . . . Elementary School without just cause." [4] He was found guilty and fined $50.00.

Upon Davis's *de novo* appeal to the Circuit Court for Cecil County, he defended on the grounds (1) that his conduct did not amount to a criminal violation under the language of § 7-301 of the Education Article, (2) that the statutory exception to the immunization requirement should be construed to encompass Davis's beliefs regardless of his lack of membership in or adherence to a recognized church or religious denomination opposing immunization, and (3) that the immunization requirement violated the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment because the exemption was limited to members or adherents of a recognized

---

**4.** Section 7-301 provides in relevant part:
"§ 7-301. Compulsory attendance.

(a) *Who must attend.* — Each child who resides in this State and is 6 years old or older and under 16 shall attend a public school regularly during the entire school year unless the child is otherwise receiving regular, thorough instruction during the school year in the studies usually taught in the public schools to children of the same age.

(b) *Excused absences.* — A county superintendent, school principal, or an individual authorized by the county superintendent or principal may excuse a student for a necessary absence.

(c) *Duty of parent or guardian.* — Each person who has under his control a child who is 6 years old or older and under 16 shall see that the child attends school or receives instruction as required by this section.

\* \* \*

(e) *Penalties.* — (1) Any person who induces or attempts to induce a child to absent himself unlawfully from school while school is in session is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $50.

(2) Any person who violates any provision of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $50."

church or religious denomination which opposed immunization.

The circuit court found that Davis's objection to immunization was based upon sincere religious belief. Nevertheless, the court rejected Davis's defenses, found him guilty, and imposed a $50 fine. The circuit court initially held that his conduct amounted to a criminal violation of § 7-301 of the Education Article. Furthermore, the court refused to construe the exemption in § 7-402 (b) to embrace one in Davis's position. Finally, the court rejected Davis's constitutional arguments. It reasoned that, because one can obtain membership in "all sorts of sects and churches and religious groups" which might espouse tenets inconsistent with immunization, the State "in considering the welfare of society and looking at the greatest good for the greatest number has a right to pass such Statutes as have been passed in this case."

Thereafter, we granted Davis's petition for a writ of certiorari. In this Court, Davis has raised only two of the arguments made below, namely that the statutory exemption should be interpreted as encompassing one with Davis's beliefs and that, if not so interpreted, the entire immunization requirement is unconstitutional.[5] The State, on the other hand, maintains that the exemption in § 7-402 does not constitute an establishment of religion because it "favors no established religion" and "merely reflects and effectuates the secular legislative purpose of balancing the need to protect the public health against the objectively established religious concerns of Maryland's citizens." (Respondent's brief, pp. 6, 8.) With respect to Davis's equal protection challenge, the State asserts that the Legislature reasonably delineated between the tenets of "recognized" churches or denominations and personal religious beliefs to safeguard the integrity of the immunization program. Finally, the

---

5. Thus Davis has not raised the argument that his conduct did not amount to a criminal violation of the truancy statute, § 7-301 of the Education Article. In light of the abandonment of the argument, we intimate no opinion on this issue.

State asks that if this Court does declare the exemption unconstitutional, we sever the exemption clause from the remainder of the immunization statute and preserve the immunization program.[6]

# I

Preliminarily, we are unable to construe the exemption in § 7-402 (b) as encompassing Davis's religious beliefs despite his lack of membership in or adherence to a "recognized church or religious denomination" opposing immunization. Although we recognize that some courts have taken this approach with respect to similar statutes challenged on Establishment Clause grounds,[7] for us to do so would flatly violate settled principles of statutory construction in this State.

We have long recognized the principle that "if a legislative act is susceptible of two *reasonable* interpretations, one of which would not involve a decision as to the constitutionality of the act while the other would, the construction which avoids the determination of constitutionality is to be preferred." *Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. 496, 505, 312 A.2d 216 (1973) (emphasis added). Or stated another way, "a construction of a statute, giving rise to doubts as to its constitutionality, should be avoided *if the language permits." Baltimore County v. Mo. Realty,* 219 Md. 155, 159, 148 A.2d 424 (1959) (emphasis supplied). *See also, e.g., Slate v. Zitomer,* 275 Md. 534, 544-545, 341 A.2d 789 (1975), *cert. denied sub nom. Gasperich v. Church,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976); *City of Gaithersburg v. Mont. Co.,* 271 Md. 505, 510, 318 A.2d 509 (1974); *District Land v. Wash. S. S. C.,* 266 Md. 301, 312, 292 A.2d 695 (1972);

---

6. The State also suggests that the circuit court was in error when it found Davis's beliefs to be religiously based. Because the State filed no cross-petition, however, the issue is not properly before this Court, Md. Rule 813 a. *See* Dean v. State, 291 Md. 198, 202, 434 A.2d 552 (1981); Dempsey v. State, 277 Md. 134, 142-143, 355 A.2d 455 (1976). Furthermore, Davis's testimony amply supported the circuit court's finding.

7. *See, e.g.,* Maier v. Besser, 73 Misc.2d 241, 341 N.Y.S.2d 411 (Sup. Ct. 1972). *See also* Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (plurality opinion).

*Barrett v. Clark,* 189 Md. 116, 127, 54 A.2d 128 (1947). As those cases make clear, the construction avoiding the constitutional issue must be "reasonable." It should only be adopted if the statutory "language permits."

Our cases have consistently held that we will not, under the guise of construction, remedy a defect in a statute or insert an exception not made by the Legislature. *Wheeler v. State,* 281 Md. 593, 596-597, 380 A.2d 1052 (1977), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86 (1978); *Coleman v. State,* 281 Md. 538, 546-547, 380 A.2d 49 (1977); *In re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A.2d 556 (1976); *Slate v. Zitomer, supra,* 275 Md. at 540; *Patapsco Trailer v. Eastern Freight,* 271 Md. 558, 564, 318 A.2d 817 (1974); *Birmingham v. Board,* 249 Md. 443, 447-450, 239 A.2d 923 (1968).

The construction of § 7-402 (b) urged by the petitioner Davis is not reasonable; it is not permitted by the statutory language. The General Assembly expressly limited the exemption to members or adherents of a recognized church or religious denomination opposing immunization. To excise the phrase "the tenets and practice of a recognized church or religious denomination of which he is an adherent or member," and insert the phrase "his religious beliefs," as contended for by the petitioner, would be to re-draft the statute under the guise of construction. In the language of Justice Harlan dealing with a similar contention, it would be "to assume an Alice-in-Wonderland world where words have no meaning," *Welsh v. United States,* 398 U.S. 333, 354, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (concurring opinion). This we decline to do.

## II

There is little question that a state may adopt a program of compulsory immunization for school-age children. *Zucht v. King,* 260 U.S. 174, 176, 43 S.Ct. 24, 67 L.Ed. 194 (1922); *Jacobson v. Massachusetts,* 197 U.S. 11, 27-29, 25 S.Ct. 358, 49 L.Ed. 643 (1905). The program need not be triggered by the existence of an epidemic. *Mountain Lakes Bd. of Education v. Maas,* 56 N.J. Super. 245, 152 A.2d 394, 405 (1959),

aff'd, 31 N.J. 537, 158 A.2d 330 (1960); *In re Elwell,* 55 Misc.2d 252, 284 N.Y.S.2d 924, 930 (1967). Nor need the state provide a religious exemption from its immunization program. *Prince v. Massachusetts,* 321 U.S. 158, 166-167, 64 S.Ct. 438, 441, 88 L.Ed. 645 (1944). If the Legislature chooses to provide a religious exemption from compulsory immunization, however, the exemption must not run afoul of the Establishment Clause.

In the case before us, the Maryland Legislature enacted an exemption limited to members or adherents of recognized churches or religious denominations, the tenets of which prohibit immunization. In creating this exemption, the legislature presumably saw fit to respect the religious beliefs of certain of its citizens but not others. The critical question is whether this distinction violates the First Amendment's Establishment Clause.[8]

In *Everson v. Board of Education,* 330 U.S. 1, 15, 67 S.Ct. 504, 91 L.Ed. 711 (1947), the United States Supreme Court delineated the reach of the Establishment Clause:

> "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion."

The Supreme Court has repeatedly returned to this broad prohibition as a starting point in Establishment Clause cases. *Torcaso v. Watkins,* 367 U.S. 488, 495, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); *Zorach v. Clauson,* 343 U.S. 306, 314, 72 S.Ct. 679, 96 L.Ed. 954 (1952); *Illinois ex rel. McCollum*

---

8. Petitioner, with good reason, does not claim that § 7-402 abridges his rights under the Free Exercise Clause of the First Amendment. Maryland's compulsory immunization program clearly furthers the important governmental objective of eliminating and preventing certain communicable diseases. "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." Prince v. Massachusetts, *supra,* 321 U.S. at 166-167.

*v. Board of Education,* 333 U.S. 203, 210, 68 S.Ct. 461, 92 L.Ed. 649 (1948).

With respect to aid to religiously connected institutions, the prohibition as set forth in *Everson* has not been absolute. *Walz v. Tax Commission,* 397 U.S. 664, 669-672, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Board of Education v. Allen,* 392 U.S. 236, 242, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *Zorach v. Clauson, supra,* 343 U.S. at 313-314; *Everson v. Board of Education, supra,* 330 U.S. at 17. A statute "aiding" religion may be consistent with the Establishment Clause if the statute has a secular legislative purpose and primary effect that neither advances nor inhibits religion and if the statute does not engender excessive entanglement between the state and religion. *Walz v. Tax Commission, supra,* 397 U.S. at 672-675. Nevertheless, the treatment of religions must be evenhanded. "The First Amendment does not select any one group or any one type of religion for preferred treatment. It puts them all in that position." *United States v. Ballard,* 322 U.S. 78, 87, 64 S.Ct. 882, 88 L.Ed. 1148 (1944).

In *Walz v. Tax Commission, supra,* 397 U.S. 664, for example, the Supreme Court, while rejecting an Establishment Clause challenge to New York's property tax exemption for churches, stated that the exemption did not single "out one particular church or religious group *or even churches as such;* rather, it . . . granted exemption to all houses of religious worship within a broad class of property owned by nonprofit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups." *Id.* at 673. Justice Harlan in his concurring opinion in *Welsh v. United States, supra,* 398 U.S. at 361, dealing with the religious conscientious objector exemption in the Selective Service Act, reiterated the importance of evenhanded treatment: "To conform with the requirements of the First Amendment's religious clauses as reflected in the mainstream of American history, legislation must, at the very least, be neutral." Later, with respect to the same exemption, the Supreme Court stated: "when government activities touch on the religious sphere, they must be secular in purpose, evenhanded in operation, and neutral

in primary impact." *Gillette v. United States,* 401 U.S. 437, 450, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). *See also Roemer v. Board of Public Works of Maryland,* 426 U.S. 736, 747, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976) (plurality opinion) ("Neutrality is what is required"); *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) ("The First Amendment mandates governmental neutrality between religion and religion").

The exemption in Maryland's immunization statute contravenes this principle of governmental neutrality regarding different religious beliefs. Section 7-402 (b) permits only members or adherents of certain religions to apply for and obtain exemptions from the immunization requirement. By limiting the availability of the exemption, subsection (b) has the effect of respecting the personal religious beliefs and practices of those who happen to be members or adherents of the two faiths that have been recognized while overlooking the religious beliefs and practices of those such as the petitioner.

However broadly the phrase "recognized church or religious denomination" could reasonably be construed, the statutory language certainly fails to encompass personal religious beliefs like Davis's which are not associated with any church or denomination. As far as the government is concerned, however, such beliefs are entitled to equal respect. A statutory exemption such as § 7-402 (b) which does less "would ignore the historic position of our country on this issue since its founding." *"United States v. Seeger,* 380 U.S. 163, 180, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

Consequently, we agree with the New Jersey court in *Kolbeck v. Kramer,* 84 N.J. Super. 569, 202 A.2d 889, 893 (Super. Ct. 1964), modified on other grounds and "preserved," 46 N.J. 46, 214 A.2d 408 (1965), that "[m]embership in a recognized religious group cannot be required as a condition of exemption from vaccination." *See Dalli v. Board of Education,* 358 Mass. 753, 759, 267 N.E.2d 219, 223 (1971).[9]

---

**9.** Other cases have also considered the problem of immunization exemptions for recognized religions. In Maier v. Besser, *supra,* the New York court chose not to give effect to the term "recognized" and thereby avoided

We hold that § 7-402 (b) contravenes the Establishment Clause of the First Amendment.[10]

## III

The next issue is whether the invalidity of the exemption renders the entire immunization requirement unconstitutional, thus necessitating a reversal of petitioner's conviction, or whether, as the State contends, the

declaring New York's religious exemption to immunization unconstitutional. The court construed the section of the immunization statute which conditioned the exemption on formal membership in a religious denomination to require proof of "a genuine and sincere religious belief." 341 N.Y.S.2d at 414. The court thus preserved and expanded the exemption.

In Avard v. Dupuis, 376 F.Supp. 479 (D.N.H. 1974), the United States District Court for the District of New Hampshire examined a New Hampshire statute which vested in local school boards the discretion to exempt children from mandatory immunization for "religious reasons." The court found the statute "unconstitutionally vague and in contravention of the due process clause of the Fourteenth Amendment." Id. at 483. The court then excised the offending provision to preserve the immunization program because "[t]he basic concern of the legislature in enacting this statute was obviously the protection of the health of school children." Id. See also Brown v. Stone, 378 So. 2d 218, 223 (Miss. 1979).

In Kolbeck v. Kramer, quoted in the text above, the New Jersey court held that Rutgers University had unconstitutionally applied the New Jersey statute which permitted the waiver of vaccination requirements for students on the ground that "the proposed vaccination interferes with the free exercise of his religious principles." 202 A.2d at 891. The University previously had granted exemptions only to members of the Christian Science faith. Because the statute itself did not require membership in a particular faith, the court upheld the statute and ordered the University to admit the plaintiff student.

The United States District Court for the Western District of Kentucky adopted a different position in Kleid v. Bd. of Ed. of Fulton, Ky. Ind. Sch. Dist., 406 F.Supp. 902 (W.D. Ky. 1976), when it rejected an Establishment Clause challenge to Kentucky's compulsory immunization statute containing an exemption similar to the one in § 7-402. In Kleid, however, the plaintiff was philosophically opposed to immunization; his opposition was not religiously based. See also Syska v. Montgomery Co. Bd. of Educ., 45 Md.App. 626, 415 A.2d 301 (1980).

10. In light of our holding, it is unnecessary for us to reach the petitioner's argument based on the Equal Protection Clause of the Fourteenth Amendment.

In addition, we note that, throughout this litigation, petitioner's constitutional challenge to the immunization requirement has been based exclusively upon federal constitutional provisions. Davis has not relied on any provisions of the Maryland Constitution, such as Art. 36 of the Maryland Declaration of Rights. Therefore, we need not and do not decide whether we would reach the same conclusion under the Maryland Constitution.

exemption is severable from § 7-402 (a) and its implementing regulations.

The primary focus in questions of severability is legislative intent. The intent to be ascertained, however, is not actual legislative intent, as the Legislature obviously intended to enact the statute as written in its entirety. "Rather, when severability is the issue, the courts must look to what *would have been the intent* of the legislative body, if it had known that the statute could be only partially effective." *Cities Service Co. v. Governor,* 290 Md. 553, 575, 431 A.2d 663 (1981), quoting from *O.C. Taxpayers v. Ocean City,* 280 Md. 585, 600, 375 A.2d 541 (1977). *See Anne Arundel County v. Moushabek,* 269 Md. 419, 428, 306 A.2d 517 (1973); *Sanza v. Md. Board of Censors,* 245 Md. 219, 338, 226 A.2d 317 (1967).

In determining this legislative intent, courts apply certain established principles of construction. "Perhaps the most important of these principles is the presumption, even in the absence of an express clause or declaration, that a legislative body generally intends its enactments to be severed if possible." *O.C. Taxpayers v. Ocean City, supra,* 280 Md. at 600. "It . . . becomes the duty of the court whenever possible to separate the valid from the invalid provisions." *Davidson v. Miller,* 276 Md. 54, 83, 344 A.2d 422 (1975). The presumption in favor of severability, and the duty to sever if at all possible, are reinforced if a severability clause is present. *O.C. Taxpayers v. Ocean City, supra,* 280 Md. at 601, and cases there cited. Moreover, since 1973, the Legislature has in effect provided that all statutes have a severability clause. Ch. 241 of the Acts of 1973.[11]

---

11. This enactment, found in Code (1957, 1981 Repl. Vol.), Art. 1, § 23, *provides as follows:*

"§ 23. Severability of provisions of statutes.

The provisions of all statutes enacted after July 1, 1973 are severable unless the statute specifically provides that its provisions are not severable. The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent."

Of virtually equal importance is the rule that, when the dominant purpose of a statute may largely be carried out notwithstanding the invalid provision, courts will ordinarily sever the statute and enforce the valid portion. *Cities Service Co. v. Governor, supra,* 290 Md. at 576; *O.C. Taxpayers v. Ocean City, supra,* 280 Md. at 601, and cases cited therein.

The language of § 7-402 of the Education Article clearly indicates that the Legislature's dominant purpose was to provide for an immunization program rather than to protect those having religious beliefs against immunization. The statute contains a broad authorization for the Secretary of Health and Mental Hygiene to promulgate regulations regarding the immunization of children entering schools. On the other hand, the exemption for persons having certain religious beliefs is quite limited. Furthermore, even this limited exemption disappears if the Secretary of Health and Mental Hygiene either declares an emergency or declares that there exists an epidemic of disease.

The legislative history of the immunization statute confirms that the dominant purpose was to authorize a comprehensive immunization program for school children. The immunization requirement for pupils was first enacted 110 years ago. Ch. 377 of the Acts of 1872 provided: "Every child, before being admitted to any public school, shall produce a certificate from a regular physician that he has been properly vaccinated." The 1872 enactment contained no exemption for those holding particular religious beliefs. During the next 97 years, the statute was broadened on several occasions, without any exemption for religious opposition to immunization. The exemption codified in § 7-402 (b) was first enacted by Ch. 800 of the Acts of 1969. At the same 1969 session, however, the Legislature enacted a revision of the education laws, in which it initially added the religious exemption as an amendment but deleted it prior to final passage. Ch. 405 of the Acts of 1969, p. 930. Perhaps because of confusion concerning the law, the religious exemption was expressly added three years later by Ch. 315 of the Acts of 1972. Even though the religious exemption was the only possible substantive change in the law made by Ch.

315, the title of the Act makes no express reference to the exemption. Instead, it reiterates the purpose of providing for regulations "regarding immunizations of children entering public schools."

Considering the strong presumption in favor of severability and the dominant purpose of the statute, we hold that subsection (b) of § 7-402 is severable from the remainder of the statute and implementing regulations. Consequently, § 7-402 (a) is of full force and effect and § 7-402 (b) is invalid. In light of our holding that there is no exemption for persons holding certain religious beliefs, the conviction of petitioner Davis must be affirmed.

*Judgment affirmed.*
*Costs to be equally divided.*