HELEN C. BRYANT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9631–77.     Filed August 3, 1979.

*Jimmylee Gray,* for the petitioner.
*William F. Hammack,* for the respondent.

OPINION

CHABOT, *Judge:* Respondent determined a deficiency of $318.09 in petitioner's Federal income tax for 1975. The only issue presented for our consideration is the constitutionality of section 214(e)(4),[1] as then in effect,[2] which operated to disallow a deduction for amounts paid as dependent care services expenses to petitioner's mother and petitioner's niece.

All of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioner was a legal resident of Detroit, Mich.

During 1975, petitioner paid to her mother, Gladys Cannon (hereinafter sometimes referred to as Cannon), $315 for dependent care services rendered. During 1975, petitioner also paid to her niece, Patricia Porter (hereinafter sometimes referred to as Porter), $1,435 for dependent care services rendered. Neither Cannon nor Porter lived with petitioner during 1975 and neither could have been claimed by petitioner as a dependent for 1975. On her 1975 Federal individual income tax return, petitioner deducted $1,750 as dependent care expenses for the combined amounts paid to Cannon and Porter.

Respondent disallowed the dependent care expense deduction on the ground that the payments were made to individuals bearing a relationship to petitioner as described in paragraphs (1) through (8) of section 152(a) and therefore were not deductible because of section 214(e)(4).[3] The parties have stipulated that the amounts were paid to individuals bearing a relationship to the taxpayer described in paragraphs (1) through (8) of section 152(a)[4] and that deductibility is therefore prohibited by section 214(e)(4). However, petitioner maintains that section 214(e)(4) is unconstitutional because it violates the due

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for the taxable year in issue.

[2]The revision of the relevant provisions by the Tax Reform Act of 1976 modified the restrictive language challenged by petitioner, but only for taxable years beginning after Dec. 31, 1975. The Revenue Act of 1978 then removed the challenged language, but only for taxable years beginning after Dec. 31, 1978.

[3]Respondent concedes that the expenses would be deductible as dependent care expenses in the absence of the requirements of sec. 214(e)(4). The parties stipulated that the amounts were paid to Cannon and Porter "for child care services rendered" by them. Respondent also concedes that the expenses were incurred for the purpose of allowing petitioner to be gainfully employed.

[4]Presumably, the parties intend particularly to refer to paragraph (4) in the case of Cannon and paragraph (6) in the case of Porter.

process clause of the Fifth Amendment of the Constitution, in that—

(1) The classification created by section 214(e)(4) has no rational relationship to the purpose of the legislation;

(2) The section establishes an impermissible "irrebuttable or conclusive presumption" that the payor of dependent care expenses to the listed relatives is making a fraudulent claim;[5] and

(3) The right of the listed relative-payee to be gainfully employed is being violated without due process of law.

Respondent contends section 214(e)(4) is constitutional.

We agree with respondent.

Where it can fairly do so, a court should interpret statutory provisions so as to avoid serious doubts as to their constitutionality. E.g., *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 730 (1964), and cases cited therein. However, petitioner's attack on the statute is a frontal one—the parties' stipulations (in accord with our understanding of the facts) have left us no choice but to assess the constitutionality of section 214(e)(4) as in effect for 1975. We proceed now to that assessment.

## I. *Statutory Framework—1975*

For the taxable year before the Court (1975), section 214 allowed deductions for employment-related dependent care expenses.[6]

In general, the deduction was allowable only—

(1) If the taxpayer itemized deductions "below the line" (sec. 63; mooted for the future by the change to a credit, sec. 44A);

(2) If the taxpayer maintained a household which contained

---

[5]In her petition, petitioner alleges the section is also unconstitutional because it "creates an irrebuttable or conclusive presumption of dependency from relationship alone." Her assertion of this particular irrebuttable presumption appears to have been abandoned on brief, and since we are uncertain about the reasoning behind the assertion, we have not considered it.

[6]SEC. 214. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(a) ALLOWANCE OF DEDUCTION.—In the case of an individual who maintains a household which includes as a member one or more qualifying individuals (as defined in subsection (b)(1)), there shall be allowed as a deduction the employment-related expenses (as defined in subsection (b)(2)) paid by him during the taxable year.

[This deduction (sec. 214) was subsequently repealed by the Tax Reform Act of 1976, Pub. L. 94–455 (sec. 504(b), 90 Stat. 1565), which enacted in its place a credit (sec. 44A) for essentially the same sort of payments (sec. 504(a), 90 Stat. 1563). These changes applied to taxable years beginning after Dec. 31, 1975 (sec. 508, 90 Stat. 1569).]

either an under–15 dependent or a dependent or spouse incapable of taking care of himself or herself (sec. 214(b)(1) and (3); now see sec. 44A(c)(1) and (f)(1));

(3) If the expenses were incurred in order to permit the taxpayer to be gainfully employed (sec. 214(b)(2); now see sec. 44A(c)(2)(A));

(4) Up to specified maximum dollar amounts (sec. 214(c)(1) and (c)(2)(B); now see sec. 44A(d) and (e));

(5) Under an adjusted gross income phase-out rule (sec. 214(d));

(6) If, in the case of married taxpayers, they file a joint return (sec. 214(e)(1); now see sec. 44A(f)(2)); and

(7) If the person to whom the payments are made does not bear any relationship to the taxpayer who is described in any of the first eight paragraphs of section 152(a) and is not a dependent described in paragraph (9) of that section[7] (sec. 214(e)(4);[8] now see sec. 44A(f)(6)).

## II. *History of Deductibility of Dependent Care Expenses*

Before enactment of section 214 in 1954, dependent care expenses were nondeductible as personal expenses. *O'Connor v. Commissioner*, 6 T.C. 323 (1946). See *Smail v. Commissioner*, 60 T.C. 719, 726 n. 8 (1973), affd. without published opinion (10th

---

[7]SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.— * * *

    (1) A son or daughter of the taxpayer, or a descendant of either,

    (2) A stepson or stepdaughter of the taxpayer,

    (3) A brother, sister, stepbrother, or stepsister of the taxpayer,

    (4) The father or mother of the taxpayer, or an ancestor of either,

    (5) A stepfather or stepmother of the taxpayer,

    (6) A son or daughter of a brother or sister of the taxpayer,

    (7) A brother or sister of the father or mother of the taxpayer,

    (8) A son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law of the taxpayer,

    (9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 153, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, * * *

[8]SEC. 214. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(e) SPECIAL RULES.—For purposes of this section—

   *      *      *      *      *      *      *

    (4) PAYMENTS TO RELATED INDIVIDUALS.—No deduction shall be allowed under subsection (a) for any amount paid by the taxpayer to an individual bearing a relationship to the taxpayer described in paragraphs (1) through (8) of section 152(a) (relating to definition of dependent) or to a dependent described in paragraph (9) of such section.

Cir., Oct. 9, 1974, 35 AFTR2d 75–1383, 75–2 USTC par. 9512. In enacting the Internal Revenue Code of 1954, Congress provided in section 214 a limited deduction for child care or other dependent care deductions. Under that section, amounts paid to a dependent of the taxpayer were not deductible.[9] Section 214 was amended in 1963 (Pub. L. 88–4, sec. 1, 77 Stat. 4) and 1964 (Pub. L. 88–272, sec. 212(a), 78 Stat. 49) to make more generous the provisions concerning qualifying taxpayers, qualifying dependents, the amount of the deduction, and the adjusted gross income limitation. The Revenue Act of 1971 (sec. 210(a), Pub. L. 92–178, 85 Stat. 518) amended section 214 to provide the rules described above (I. Statutory Framework—1975), as applicable to the taxable year before us.

The Tax Reform Act of 1976 (Pub. L. 94–455) repealed section 214 (90 Stat. 1565) and replaced it with a credit (90 Stat. 1563) for dependent care deductions, effective for taxable years beginning after December 31, 1975 (90 Stat. 1569). The Act also made payments to a relative who is not a dependent of the taxpayer eligible for the credit if the service which the relative performs is considered employment for Social Security purposes.[10]

The report of the Senate Committee on Finance provided the following explanation (S. Rept. 94–938, p. 133 (1975), 1976–3 C.B. (Vol. 3) 49, 171) for the 1976 Act revision on this point:

---

[9]SEC. 214. EXPENSES FOR CARE OF CERTAIN DEPENDENTS.

(b) LIMITATIONS.—

(1) IN GENERAL.—The deduction under subsection (a)—

(A) shall not exceed $600 for any taxable year; and

(B) shall not apply to any amount paid to an individual with respect to whom the taxpayer is allowed for his taxable year a deduction under section 151 (relating to deductions for personal exemptions).

[10]SEC. 44A. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(f) SPECIAL RULES.—for purposes of this section—

*     *     *     *     *     *     *

(6) PAYMENTS TO RELATED INDIVIDUALS.—

(A) IN GENERAL.—Except as provided in subparagraph (B), no credit shall be allowed under subsection (a) for any amount paid by the taxpayer to an individual bearing a relationship to the taxpayer described in paragraphs (1) through (8) of section 152(a) (relating to definition of dependent) or to a dependent described in paragraph (9) of such section.

(B) EXCEPTION.—Subparagraph (A) shall not apply to any amount paid by the taxpayer to an individual with respect to whom, for the taxable year of the taxpayer in which the service is performed, neither the taxpayer nor his spouse is entitled to a deduction under section 151(e) (relating to deduction for personal exemptions for dependents), but only if the service with respect to which such amount is paid constitutes employment within the meaning of section 3121(b).

The committee also views the bar on deducting payments to relatives for the care of children as overly restrictive. Relatives generally provide superior attention. In order to cover the child care expenses paid to relatives and also to limit the risks of abuse (such as splitting or transferring income by gift to relatives who are in lower brackets or have incomes below taxable levels) the committee has provided the child care allowance only for those payments made to a relative who is not the taxpayer's dependent and whose wages are subject to social security tax.

The Senate amendment differed only slightly from the bill passed by the House of Representatives and the report of the House Committee on Ways and Means provided essentially the same explanation for the change from then present law. (H. Rept. 94–658, p. 148 (1975), 1976–3 C.B. (Vol. 2) 695, 840. See S. Rept. 94–1236 (Conference Rept.), p. 432, 1976–3 C.B. (Vol. 3) 807, 836; General Explanation of the Tax Reform Act of 1976, prepared by the staff of the Joint Committee on Taxation, p. 125, 1976–3 C.B. (Vol. 2) 1, 137.)

This provision was further revised by section 121 of the Revenue Act of 1978 (Pub. L. 95–600, 92 Stat. 2779), for taxable years beginning after December 31, 1978, to eliminate the requirement that the relative's services be considered employment for Social Security purposes.[11] The provision was added to the 1978 Act on the Senate floor, with the following explanation by its proponent, Senator Dole:

This legislation is necessary to enable working parents to claim the day care tax credit when one of their parents—their children's grandparents—is the babysitter. As you may recall, when the section 44A day care tax credit was enacted in the 1976 Tax Reform Act, we decided to allow this nonrefundable credit no matter whether relatives, neighbors, strangers, or day care centers did the babysitting. However, in drafting this provision, it was cross-referenced to the definition of employment under the Social Security Act in such a way that babysitting done by grandparents virtually never qualifies for the tax credit.

What my amendment does is simply to delete this cross reference and

---

[11] SEC. 44A(f). EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(6) PAYMENTS TO RELATED INDIVIDUALS.—No credit shall be allowed under subsection (a) for any amount paid by the taxpayer to an individual—

(A) with respect to whom, for the taxable year, a deduction under section 151(e) (relating to deduction for personal exemptions for dependents) is allowable either to the taxpayer or his spouse, or

(B) who is a child of the taxpayer (within the meaning of section 151(e)(3)) who has not attained the age of 19 at the close of the taxable year.

For purposes of this paragraph, the term "taxable year" means the taxable year of the taxpayer in which the service is performed.

rewrite the part of section 44A pertaining to relatives so that it does what we had originally intended—allow the tax credit when the grandparents are the babysitters. The amendment does not change the present rule which denies the credit for amounts paid to dependents, nor is the credit allowed for amounts paid to one's own spouse or minor children. [124 Cong. Rec. 17,669 (daily ed. Oct. 7, 1978).]

This is substantially the same explanation given by the House Committee on Ways and Means for the adoption of that statutory language in H.R. 8535. H. Rept. 95–1092. See H. Rept. 95–1800 (Conference Rept.), pp. 202–203, 1978–3 C.B. (Vol. 1) 521, 536–537; General Explanation of the Revenue Act of 1978, prepared by the staff of the Joint Committee on Taxation, p. 64.

### III. *Rational Relationship Test*

Petitioner asserts that the classification created by section 214(e)(4) has no rational relationship to the purpose of the legislation and that, as a result, the statute violates the equal protection of the laws concepts (applicable to the States under section 1 of the 14th Amendment[12]) as they are embodied in the 5th Amendment[13] to the United States Constitution. *Johnson v. Robison*, 415 U.S. 361, 364 n. 4 (1974); *Bolling v. Sharpe*, 347 U.S. 497 (1954).

It is well settled that deductions are a matter of legislative grace. E.g., *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). However, if Congress decides to grant deductions of a general type, a denial of them to a particular class may be unconstitutional if that denial infringes on a constitutionally protected fundamental right or involves an otherwise suspect classification. *Reed v. Reed*, 404 U.S. 71 (1971); *Speiser v. Randall*, 357 U.S. 513, 518 (1958); *First Unit. Church v. Los Angeles*, 357 U.S. 545, 548 (1958); *Grosjean v. American Press Co.*, 297 U.S. 233, 250 (1936); *Moritz v. Commissioner*, 469 F.2d

---

[12]"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[13]"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

466 (10th Cir. 1972), revg. 55 T.C. 113 (1970). See *Shapiro v. Thompson*, 394 U.S. 618, 627, 630–631 (1969). See also *Dandridge v. Williams*, 397 U.S. 471, 485 n. 17 (1970); *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4 (1938).

The parties agree that a classification not involving a fundamental right or suspect category is constitutional if the classification is reasonable and rests upon some ground of difference having a fair and substantial relation to the object of the legislation. *Keeler v. Commissioner*, 70 T.C. 279, 285 (1978). As the Supreme Court stated in upholding a State welfare regulation under the equal protection clause of the 14th Amendment (*Dandridge v. Williams*, 397 U.S. at 485):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426.

"Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6 (1970), revg. per curiam 308 F. Supp. 761 (D. Md. 1970). Respondent need not demonstrate that Congress actually considered such a state of facts, if the facts are perceptible to this Court. *Keeler v. Commissioner*, 70 T.C. at 285; *Hamilton v. Commissioner*, 68 T.C. 603, 607 (1977). Finally, there is a presumption of the constitutionality of an Act of Congress, which is particularly strong in the case of a revenue provision, e.g., *Nicol v. Ames*, 173 U.S. 509, 514–515 (1899). The Federal government traditionally has had very broad classification powers in the taxation field. *Barter v. United States*, 550 F.2d 1239, 1240 (7th Cir. 1977), affg. per curiam *Johnson v. United States*, 422 F. Supp. 958, 971 (N.D. Ind. 1976); *Hamilton v. Commissioner*, 68 T.C. at 608.

This Court has previously considered the constitutionality of various provisions of section 214. In *Nammack v. Commissioner*, 56 T.C. 1379 (1971), affd. per curiam 459 F.2d 1045 (2d Cir. 1972),

this Court held that section 214(b) (as in effect for 1965), which provided for an adjusted gross income limitation, did not violate the due process clause of the Fifth Amendment. In *Black v. Commissioner*, 69 T.C. 505 (1977), the petitioners therein claimed that the following requirements imposed by section 214 (as in effect for the years 1972 and 1973) were violations of the due process clause of the Fifth Amendment: (1) The adjusted gross income limitation, (2) the requirement that a joint return be filed, and (3) the limit on the amounts deductible. Again this Court upheld the constitutionality of the provisions. The joint return requirement also was upheld in *Cash v. Commissioner*, 580 F.2d 152 (5th Cir. 1978), affg. a Memorandum Opinion of this Court.[14] In *Keeler v. Commissioner, supra,* this Court upheld the constitutionality of the section 214(b)(1) (as in effect for 1973) requirement that a qualifying individual be a dependent.

In one case, *Moritz v. Commissioner, supra,* a portion of section 214 (as in effect in 1968) was held unconstitutional. Until the revisions by the Revenue Act of 1971, section 214 benefits were denied to men who had never married, although they were available to women who had never married. Such a sex-based classification "is subject to scrutiny under equal protection principles. Reed v. Reed, 404 U.S. 71, 75 * * * . When placed under the scrutiny required in viewing sex discrimination, Reed v. Reed, supra, we find justification for the discrimination lacking." *Moritz v. Commissioner,* 469 F.2d at 470. *Moritz* involved a suspect classification. No such suspect classification or apparent infringement on a protected right is apparent in the instant case. The provision here at issue applies regardless of the sex of the payor, the payee, or the child cared for. The *Moritz* focus on a classification requiring special scrutiny is not present here. *Moritz,* then, is properly distinguishable.

We believe that the Congress acted within the bounds of its constitutional power in enacting section 214(e)(4). As illustrated by the committee reports for the Tax Reform Act of 1976, *supra,* the Congress was concerned about limiting the risks of abuse such as splitting or transferring income by gift to relatives who are in lower brackets or have incomes below taxable levels. The Congress also may well have been concerned with the difficulty

---

[14]T.C. Memo. 1977–405.

of ascertaining whether payments between family members had been made (particularly where the recipient would not otherwise be subject to Federal income taxation) or whether, since the money remains within the family, there has been a sufficient change in economic circumstances to warrant the deduction.[15] The Congress' concern with potential abuses in intrafamily transactions is apparent in other sections of the Code as well (such as secs. 267, 318, and 1239). It is reasonable for Congress to prohibit deductions for payments to relatives or dependents when concerned with abuses that might arise from intrafamily transactions. See *Keeler v. Commissioner, supra* at 286. Recognition by Congress of potential administrative burdens and practical problems of enforcement are legitimate, nonarbitrary reasons for the classification. As the Supreme Court stated in *Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69–70 (1913):

The problems of government are practical ones and may justify, if they do not require, rough accommodations * * * . Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth Amendment; * * *

Because of the foregoing, we hold that section 214(e)(4) creates a legislative classification well within the Congress' power to classify for tax purposes.

We do not find petitioner's constitutional argument more persuasive merely because the Tax Reform Act of 1976 and the Revenue Act of 1978 removed, in whole or in part, the restriction on payments to relatives. "The mere fact that Congress has not, in the past, favored petitioner is not grounds for asserting that Congress exceeded its constitutional authority." *Keeler v. Commissioner, supra* at 284 (fn. ref. omitted). The statutory provision that Congress provided for the year in issue may have been imperfect or unwise as suggested by the amendments in 1976 and 1978, but we cannot say Congress was wholly arbitrary. See *Buttke v. Commissioner,* 72 T.C. 677 (1979).

## IV. *Irrebuttable Presumption*

Petitioner argues that section 214(e)(4) creates an "irrebuttable presumption" that violates the due process provisions of the Fifth Amendment. See n. 13 *supra.* As we discern it, her

---

[15]A. Feld, "Deductibility of Expenses for Child Care and Household Services: New Section 214," 27 Tax L. Rev. 415, 423–424 (1972).

argument is as follows: the instant restriction was enacted to prevent fraudulent dependent care deductions whenever payment is claimed to be made to specified relatives; the Government has thus presumed that if a payment is made to a specified relative the taxpayer is making a fraudulent claim; the taxpayer thus is deprived of an important benefit without being allowed to demonstrate he or she is not making a fraudulent claim.

The general principle of the doctrine of the unconstitutionality of "irrebuttable presumptions" is that crucial facts may not constitutionally be conclusively presumed against someone so as to deprive that person of any significant interest in life, liberty, or property.

The current status of the irrebuttable presumption approach has been dealt with by the Supreme Court in a number of cases during the current decade. These cases are analyzed in the opinion of the Court of Appeals for the Second Circuit in *Sakol v. Commissioner*, 574 F.2d 694, 696–698 (1978), affg. 67 T.C. 986 (1977), and we need not repeat the analysis here. We conclude that the issue presented herein is a "congressional judgment * * * in the economic area [which] will be upheld when there is a rational relationship between the criteria set forth in the statutory mandate and a legitimate congressional purpose." 574 F.2d at 698.

Thus, assuming arguendo that section 214(e)(4) constitutes an irrebuttable presumption, it is acceptable as long as the rational relationship test is satisfied. In fact, petitioner seems to admit that this is the appropriate test. We have already determined under part III of this opinion that the restriction of section 214(e)(4) rationally relates to a reasonable concern of Congress. Thus, section 214(e)(4) does not create an unconstitutional presumption.

Petitioner, at one point in her brief, seems to be asserting that since section 214(e)(4) involves child care, it involves issues of the fundamental personal interests of the parents in raising children and the freedom of choice in matters of family life and therefore its constitutionality should be judged by a more strict standard. This Court already considered this argument in *Black v. Commissioner, supra,* and rejected it because section 214 has only an incidental and indirect effect on the family unit. 69 T.C. at 510.

## V. *Constitutional Rights of Payee*

Petitioner advances a third argument—that section 214(e)(4) is unconstitutional in that it violates the rights of relatives listed in paragraphs (1) through (8) of section 152(a) to earn a livelihood. Respondent contends in response that (a) petitioner lacks standing to assert the constitutional claims of others; and (b) the relatives' constitutional rights are not violated by section 214(e)(4).

In our discussion of petitioner's claim that section 214(e)(4) is a violation of her due process rights, we have already determined that section 214(e)(4) satisfies the reasonable relationship test. Were we to consider whether the constitutional rights of petitioner's relatives were violated because of the interference of section 214(e)(4) with their rights to earn a livelihood, the standard would be the same. *Flemming v. Nestor*, 363 U.S. 603 (1960); *Kotch v. Pilot Comm'rs*, 330 U.S. 552 (1947). Petitioner does not seem to disagree with this conclusion. Consequently, we need not consider whether petitioner has standing to raise the constitutional rights of others in the situation presented herein.

We conclude that section 214(e)(4), as it existed during the year in issue, is constitutional. Since petitioner concededly does not qualify under the statute, she is not entitled to a dependent care expense deduction for 1975.

*Decision will be entered for the respondent.*