LEWIS HANFORD KESSLER, JR., AND KAY BETHARD
KESSLER, PETITIONERS v. COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 29539-81.      Filed December 8, 1986.

Lewis Hanford Kessler, Jr., pro se.
*Pamela R. Martin,* for the respondent.

CHABOT, *Judge*: Respondent determined a deficiency in Federal individual income tax against petitioners for 1978 in the amount of $1,380.65. After concessions by the parties, the issue for decision is whether petitioners may deduct, under section 170,[1] their expenses in travelling to and from, and staying in, Puerto Rico for the purpose of allowing petitioner-husband to engage in religious worship and prayer.

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioners Lewis Hanford Kessler, Jr. (hereinafter sometimes referred to as Lewis), and Kay Bethard Kessler (hereinafter

---

[1]Unless indicated otherwise all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.

sometimes referred to as Kay), husband and wife, resided in Ypsilanti, Michigan.

Lewis' religious belief is in "a/the Sun God".[2] In accordance with his religious beliefs, Lewis makes annual journeys to the region located between the Tropic of Cancer and the Tropic of Capricorn (hereinafter sometimes referred to as the tropics) for the purpose of religious worship and prayer.

In 1978, Lewis made two trips south with Kay. One of the trips, however, was not to the tropics; the cost of this trip was not deducted by petitioners. The other trip was to Puerto Rico, which is in the tropics. On their trip to Puerto Rico, petitioners spent a total of $1,468.94. Of this total, $337.50 was for Kay's air fare.

All of the claimed deductions were expenses for petitioners' trip to Puerto Rico (i.e., transportation, hotel accommodations, meals, etc.) and none was spent for charity.

Lewis does not belong to an organization or congregation of Sun God worshippers. The expenses for the trip to Puerto Rico were not given or contributed to or for the use of a religious organization.

## OPINION

Petitioners contend that respondent's interpretation of section 170 violates Lewis' rights under several provisions of the United States Constitution by allowing members of organized religions to deduct essentially all of their expenses of exercising their religions while denying petitioners the right to deduct their expenses of practicing their religion of worshipping the Sun God. In particular, petitioners contend that Lewis' rights under the following provisions of the Constitution are being violated: (1) article I, section 8, clause 1;[3] (2) article IV, section 2;[4] (3) article VI,

---

[2] No evidence was presented as to Kay's religious beliefs. Lewis testified that he does not know whether Kay shares his belief in the Sun God. Note that evidence about either petitioner's religious beliefs is presented to support petitioners' contentions as to their constitutional rights, and not for a purpose which is prohibited by Rule 610 of the Federal Rules of Evidence.

[3] We assume that petitioners refer to the requirement that "all Duties, Imposts and Excises shall be uniform throughout the United States".

[4] We assume that petitioners refer to the "privileges and immunities" clause.

clause 3;[5] (4) the First Amendment;[6] and (5) the 14th Amendment, section 1.[7]

Respondent asserts that section 170 is applied to all taxpayers in an equal fashion and contends that the provision does not violate the Constitution.

We agree with respondent.

Under section 170,[8] a taxpayer may deduct a contribution or gift to or for the use of "A corporation, trust, or community chest, fund, or foundation— * * * organized and operated exclusively for" certain specified purposes. Sec.

---

[5] We assume that petitioners refer to the requirement that "no religious Test shall ever be required as a Qualification to any office or public Trust under the United States." .

[6] The First Amendment to the United States Constitution reads as follows:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

[7] We assume that petitioners refer to the "equal protection" clause, which directly applies only to the States, but which is treated as being subsumed in the due process clause of the Fifth Amendment, which in turn is a restriction on the powers of the Federal Government. *Johnson v. Robison*, 415 U.S. 361, 364 n. 4 (1974); *Bolling v. Sharpe*, 347 U.S. 497 (1954).

[8] Sec. 170 provides, in relevant part, as follows:

SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a) ALLOWANCE OF DEDUCTION.—

(1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

\*      \*      \*      \*      \*      \*      \*

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\*      \*      \*      \*      \*      \*      \*

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

(D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B).

The subsequent amendment of this provision by sec. 286(b) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 570, does not apply to the instant case.

170(c)(2)(B). In addition, the donee entity must be "created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States". Sec. 170(c)(2)(A). In all cases, in order for the contribution to be deductible under section 170, the contribution or gift must be to or for the use of an organized entity.

Petitioners concede that they "do not qualify under the IRS interpretation of Sect 170". More to the point, since their expenses were not contributions or gifts to an organized entity, these expenses clearly do not qualify under the statute as written. *Stark v. Commissioner*, 86 T.C. 243, 256 (1986); *Bilingual Montessori School of Paris v. Commissioner*, 75 T.C. 480 (1980); *Dohrmann v. Commissioner*, 18 B.T.A. 66, 68 (1929). See *Weingarden v. Commissioner*, 86 T.C. 669 (1986), on appeal (6th Cir., July 16, 1986).

Section 170 clearly allows a deduction for gifts or contributions to organized churches. Sec. 170(b)(1)(A)(i); compare *Canelo v. Commissioner*, 41 B.T.A. 713, 720, 734 (1940), with *Chapman v. Commissioner*, 48 T.C. 358 (1967). Members of an organized church may, as a practical matter, share the costs of support of the organization (e.g., *Larson v. Valente*, 456 U.S. 228, 246-247 n. 23 (1982)) and deduct their payments toward these costs. E.g., *Ortseifen v. Commissioner*, 14 B.T.A. 1403 (1929).[9] In contrast, Lewis holds religious beliefs that do not involve an organization to further his ability to exercise his religion. Nonetheless, he incurs expenses in exercising his religious beliefs. Because section 170 as written does not allow him a tax deduction for expenses he incurs in the exercise of his religion, petitioners contend that they are denied equal treatment solely because of the form in which Lewis chooses to exercise his religious beliefs. The issue to be decided is whether the distinction effectively drawn by the statute between worshippers in organized religions and those who choose to worship without an organized religion results in a

---

[9]However, a deduction is not available where the payment is made with the expectation of receiving in return a particularized commensurate benefit to the payor. *DeJong v. Commissioner*, 309 F.2d 373 (9th Cir. 1962), affg. 36 T.C. 896 (1961); *Graham v. Commissioner*, 83 T.C. 575, 580-581 (1984), on appeal (9th Cir., Nov. 19, 1984).

governmental preference to organized religions in violation of the First Amendment.

The Congress may make classifications among taxpayers as it deems necessary and proper (see U.S. Const. art. I, sec. 8[10]) unless limited by other provisions of the Constitution.

In *Nicol v. Ames*, 173 U.S. 509 (1899), the Supreme Court set forth as follows (pp. 514-515) the overall approach we must take to challenges to the constitutionality of a Federal tax law:

It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act, and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the Government rest. This is particularly true of a revenue act of Congress. The provisions of such an act should not be lightly or unadvisedly set aside, although if they be plainly antagonistic to the Constitution it is the duty of the court to so declare. The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive.

In particular, if a tax law's classification scheme is challenged, then "Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6 (1970), revg. per curiam 308 F. Supp. 761 (D. Md. 1970). Respondent need not demonstrate that the Congress actually considered such a state of facts, if the facts are perceptible to this Court. *Bryant v. Commissioner*, 72 T.C. 757, 764 (1979).

However, where the classification scheme involves an area that is constitutionally protected, more is required than a

---

[10] Art. I, sec. 8 provides, in pertinent part, as follows:

Section 8. The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; * * *—And

To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

rational relationship in order to sustain it. See *Bryant v. Commissioner*, 72 T.C. at 763, and cases there cited. Religious liberty is a basic right guaranteed by the Constitution and classification according to religious belief needs more than a rational relationship to sustain it. *Sherbert v. Verner*, 374 U.S. 398, 406-407 (1963); *Fowler v. Rhode Island*, 345 U.S. 67, 69 (1953). See *United States v. Seeger*, 380 U.S. 163, 176 (1965); *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 729-730 (1964).

In *Larson v. Valente, supra*, the Supreme Court stated that when a court is presented with a law "granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." 456 U.S. at 246. The Court went on to explain that if a law grants a denominational preference, then "that rule must be invalidated unless it is justified by a compelling governmental interest, cf. *Widmar v. Vincent*, 454 U.S. 263, 269-270 (1981), and unless it is closely fitted to further that interest, *Murdock v. Pennsylvania*, 319 U.S. 105, 116-117 (1943)." 456 U.S. at 247.

Where we deal with a classification allegedly granting a denominational preference, the fact that the alleged discrimination arises from the Congress' exercise of its taxing power does little to insulate the statute from scrutiny. In *Flast v. Cohen*, 392 U.S. 83, 103-104 (1968), the Supreme Court recognized as follows:

one of the specific evils feared by those who drafted the Establishment Clause and fought for its adoption was that the taxing and spending power would be used to favor one religion over another or to support religion in general. * * * The concern of Madison and his supporters was quite clearly that religious liberty ultimately would be the victim if government could employ its taxing and spending powers to aid one religion over another or to aid religion in general. * * *

In *Larson v. Valente, supra*, a State statute which exempted some religious organizations from the State's charitable organization reporting laws was held to be an unconstitutional grant of denominational preference. The statute provided "that only those religious organizations that received more than half of their total contributions from members or affiliated organizations would remain exempt from the registration and reporting requirements of

the Act." 456 U.S. at 231-232. In distinguishing the statute in *Larson v. Valente* from statutes which the Court had held not to grant an unconstitutional religious preference, the Court stated (456 U.S. at 246-247 n. 23) as follows: .

As we noted in *Gillette* [*v. United States*], the "critical weakness of petitioners' establishment claim" arose "from the fact that § 6(j), on its face, simply [did] not discriminate on the basis of religious affiliation." 401 U.S., at 450. In contrast, the statute challenged in the case before us focuses *precisely and solely upon religious organizations*. [Emphasis supplied.]

Section 170, unlike the statute in *Larson v. Valente*, grants a deduction for gifts or contributions to a broad class of organizations. In upholding as constitutional a New York statute granting property tax exemptions to religious organizations, the Supreme Court stated in *Walz v. Tax Commission*, 397 U.S. 664, 673 (1970), as follows:

[The State] has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of religious worship within a broad class of property owned by nonprofit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups. The State has an affirmative policy that considers these groups as beneficial and stabilizing influences in community life and finds this classification useful, desirable, and in the public interest. * * *

The requirement in section 170 that all donees be organizations applies equally to the religious and the nonreligious. Consequently, unlike the statute in *Larson v. Valente*, section 170 does not focus "precisely and solely on religious organizations".

In proposing on the Senate Floor the first charitable contribution deduction provision in 1917, Senator Hollis of New Hampshire explained the purpose of his provision as follows (55 Cong. Rec. 6728):

Usually people contribute to charitable and educational objects out of their surplus. After they have done everything else they want to do, after they have educated their children and traveled and spent their money on everything they really want or think they want, then, if they have something left over, they will contribute it to a college or to the Red Cross or for some scientific purposes. Now, when war comes and we impose these very heavy taxes on incomes, that will be the first place where the wealthy men will be tempted to economize, namely, in donations to charity. They will say, "Charity begins at home."

Section 170, like the property tax exemption in *Walz v. Tax Commission*, is designed to benefit a broad class of institutions. The legislature granted a deduction for charitable contributions to ensure that the income tax would not impede the flow of funds to institutions that form an integral part of the fabric of our society. That this is a valid secular purpose has been recognized by the Supreme Court. *Walz v. Tax Commission*, 397 U.S. at 673.

The section 170 requirement that a donation be to an organized entity is secular and necessary to carry out the valid purposes of section 170. The purposes of the charitable contribution deduction can only be furthered if the Government can be assured that the funds are appropriately expended. Without an organization that can be audited and examined, the ability of the Government to acquire this assurance is greatly diminished.

We do not question the sincerity of Lewis' beliefs[11] nor are we presented with a governmental statute that would prevent the exercise of those beliefs. The financial burden on petitioners here is not so grievous as to render the denial of the deduction an unconstitutional burden on petitioners' free exercise rights. *United States v. Lee*, 455 U.S. 252 (1982); cf. *Sherbert v. Verner, supra*. Petitioners are free to practice their religion, they just will not be subsidized. *Cammarano v. United States*, 358 U.S. 498 (1959).

In *Graham v. Commissioner*, 83 T.C. 575, 583 (1984), on appeal (9th Cir., Nov. 19, 1984), we stated as follows:

The instant case is distinguishable from *Larson* because section 170, unlike the charitable solicitation law in *Larson*, does not make classifications among religions. Furthermore, unlike *Larson*, here there is no legislative history revealing overt discrimination. Finally, even if section 170 has the effect of advancing one religion more than another, that fact alone does not make the statute unconstitutional. The establishment clause does not prohibit a statute from having a disparate impact on religious organizations provided the disparate impact results from the application of secular criteria. *Lynch v. Donnelly*, 465 U.S. [668] (1984); *Gillette v. United States*, 401 U.S. 437, 452 (1971); *McGowan v. Maryland*, 366 U.S. 420, 442-444 (1961). Here the tests for determining the deductibility of claimed charitable contributions are based on secular criteria. Further, *Larson* is distinguishable from the case at bar because the section 170 classification bears equally upon all religious organiza-

---

[11]Of course, we could not constitutionally question the validity of Lewis' beliefs. *United States v. Seeger*, 380 U.S. 163, 184-185 (1965).

tions. Thus, there is not the political divisiveness here that was prevalent in *Larson*. Accordingly, the argument of unconstitutionality under the establishment clause is rejected.

We hold that section 170 does not prefer one religion over another in violation of Lewis' rights under the First Amendment.

We have dealt with petitioners' attack on section 170 in light of their contention that the claimed unconstitutionality of that section could be cured by an expansion of the statute to allow a deduction for their trip to Puerto Rico. We have concluded that the statute does not unconstitutionally discriminate between Lewis' religion and organized churches.

Petitioners apparently also contend that section 170 is unconstitutional because it has a primary effect which either advances or inhibits religion. *Committee for Public Education v. Nyquist*, 413 U.S. 756, 773 (1973); *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). If we were to find section 170 unconstitutional as having a primary effect of either advancing or inhibiting religion, we could not allow the statute to stand. Without section 170 we would have no statute under which to allow petitioners' claimed deduction. As a result, petitioner would receive no relief from our resolution of this issue. Since we are unable to grant relief to petitioners through the resolution of this issue, petitioners lack the requisite standing needed to raise this issue. As a result, we do not resolve this issue in the instant case. *Lane-Burslem v. Commissioner*, 72 T.C. 849 (1979), affd. 659 F.2d 209 (D.C. Cir. 1981); *Lingenfelder v. Commissioner*, 38 T.C. 44, 45 (1962). See *Golden Rule Church Association v. Commissioner*, 41 T.C. at 731. But see *Davis v. Maryland*, 294 Md. 370, 451 A.2d 107 (1982).

Petitioners also state that Lewis' rights under a number of other provisions of the United States Constitution (see notes 3-7, *supra*) are violated by "IRS interpretation of Section 170". They then state that "For me to embellish or attempt to more clearly define the Constitution is clearly not required." Petitioners are mistaken. We will not guess at claims of unconstitutionality. It is a serious business to consider whether the Nation's legislature has violated the Constitution under which it is established and under which

it acts. See *Nicol v. Ames, supra.* We will not decide such questions unless they are properly presented and must be decided in order to determine whether petitioners have a deficiency and, if so, in what amount. Compare, e.g., *Bryant v. Commissioner,* 72 T.C. at 759, with *Golden Rule Church Association v. Commissioner,* 41 T.C. at 730-731.

We hold for respondent on the one matter presented to us; because of respondent's concessions on other matters,

*Decision will be entered under Rule 155.*