MICHAEL A. WOLF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wolf v. Commissioner
Docket No. 4300-90
United States Tax Court
T.C. Memo 1992-432; 1992 Tax Ct. Memo LEXIS 453; 64 T.C.M. (CCH) 322; July 29, 1992, Filed *453 Decision will be entered for respondent. For Petitioner: H. Louis Sirkin and Martin S. Pinales. For Respondent: Robin L. Herrell. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined a deficiency in petitioner's 1983 Federal income tax and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
$ 178,345
$ 8,917
50% of the interest
$ 44,586
due on $ 178,345
Petitioner timely filed a petition with this Court challenging respondent's determination on the following grounds: (1) Assessment of the additional tax was barred by the applicable statute of limitations; (2) the seizures by Federal and State agents of contraband and cash, which provided evidence supporting respondent's notice of deficiency, violated petitioner's constitutional rights; and (3) respondent grossly overstated the value of the contraband. Respondent's answer to the petition generally denied petitioner's allegations, and also amended the determination to reflect a computational error, as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
$ 170,937
$ 8,546.85
50% of the interest
$ 42,734.25
*454 Inasmuch as petitioner did not present the statute of limitations and valuation issues for our consideration at trial or on brief, petitioner is deemed to have conceded those issues. See, e.g., Dean v. Commissioner, 83 T.C. 56, 57 n.2 (1984); Burbage v. Commissioner, 82 T.C. 546, 547 n.2 (1984), affd. 774 F.2d 644 (4th Cir. 1985). The remaining issues presented for our consideration, by reason of petitioner's constitutional argument, are as follows: (1) Whether petitioner's constitutional rights under the Fourth Amendment were violated; (2) if so, whether evidence obtained in violation of petitioner's constitutional rights should be suppressed under the exclusionary rule; (3) if so, whether respondent's statutory notice of deficiency is invalid; (4) whether, in the alternative, the burden of coming forward with evidence of the deficiency was shifted to respondent; and (5) if so, whether respondent met that burden. After threading our way through this labyrinth, we conclude that respondent's amended determinations of tax and additions will be upheld. All section references are to the Internal Revenue Code in effect *455 for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Petitioner's legal residence was Xenia, Ohio, when he filed his petition. Some of the facts have been stipulated and are incorporated herein by this reference. On January 6 and 7, 1984, petitioner and Peggy Lynn Harp resided at 1322 Paintersville-New Jasper Road, Xenia, Ohio (New Jasper Road). At approximately 11:30 p.m., on January 6, 1984, agents of the Federal Bureau of Investigation (FBI), the Dayton Police Department, the Montgomery County, Ohio, Sheriff's Office, and the Greene County, Ohio, Sheriff's Office executed the first of two search warrants for the premises at New Jasper Road. The second search warrant was issued at approximately 2 a.m. on January 7, 1984, and was executed soon thereafter. Ms. Harp was present during the execution of both warrants. On the evening of January 6, 1984, Special Agent Robert A. Brawner (Agent Brawner) of the Dayton, Ohio office of the FBI presented Judge Judson L. Shattuck, Jr., Greene County Court of Common Pleas, with an application and affidavit for a search warrant for the premises at New Jasper Road. In the *456 affidavit, Agent Brawner alleged the following grounds for search: On 01/06/84, Det. R. Clemmer, Dayton Police Dept. Organized Crime Unit, advised the affiant that a confidential and reliable informant had contacted Det. R. Clemmer, supra, on 1/6/84, regarding Narcotics activity. A.) The informant has provided drug information in the past, which had proven truthful and reliable, through independent investigation. B.) The information provided by said informant has resulted in the seizure of drugs, and the arrest of 4 (four) subjects for drug related offenses. C.) The informant has alleged to the officers that the information is based upon his personal knowledge and belief. Det. Clemmer and Det. Gentry has [sic] worked with the affiant on Narcotics investigations in the past and the information provided by Det. Clemmer, has proved reliable and accurate in the past. On 01/06/84, Det. R. Clemmer advised the affiant that * * * one Vicki Toms, has been making deliverys [sic] of Cocaine, to 234 Linden avenue, on several dates. The informant stated that Toms would be making a delivery on 01/06/84. The informant stated that Toms would be driving a yellow late model Lincoln, *457 believed to be owned by Bill Molen. The informant advised that Toms would be going to a location near Jamestown, Ohio, where she would meet a subject known only to the informant as "Mike". The informant states that "Mike" lives on a farm, at the end of a long lane. The informant further advised that Toms would be obtaining the cocaine from "Mike", at his residence. rased [sic] on the above information obtained by Det. Clemmer's informant, a surveillance was iniated [sic] on the residence of Vicki Toms, on Saranac Circle, on 01/06/84. At approx. 4:00 P.M, a yellow lincoln bearing Ohio license "RDS548", occupied by three subjects left Saranac Cir, and went to 234 Linden Avenue, Dayton, Ohio, where two of the subjects departed the vehicle. After dropping the two subjects, surveillance continued, with the driver being identified as a white female. Continous [sic] serveillance [sic] was maintained until the subject vehicle arrived at 1322 Paintersville-New Jasper Rd, where it was observed. Surveillance was maintained on the vehicle and at approximately 5:15 PM, Dets. Clemmer and Gentry advised the affiant that the female was leaving the residence, in the above described vehicle. *458 Continious [sic] surveillance was maintained until the vehicle was stopped on US 35, west of Smithville Rd, in the City of Dayton, Montgomery County, State of Ohio. Prior to the vehicles [sic] being stopped, no effort was made by the driver to exit the vehicle at any other locations. The driver of the vehicle was identified as Vicki Toms, White Female, approx. 30 years of age. As a result of the stop, approximately 47 grams of suspected Cocaine was recovered from Toms' brown leather purse. A field test was made on the suspected cocaine, which proved positive for cocaine-hydrocloride [sic]. After being advised of her constitutional rights by Dets. Clemmer and Gentry, an interview was conducted. Toms admitted that she picked up the cocaine, at an address near Xenia, Ohio. On 01/06/84, Sgt. R. Reynolds advised affiant that independent investigation revealed, 1322 Paintersville-Jamestown Rd, Xenia, Ohio, to be the address of Mike A. Wolf. On the basis of the foregoing affidavit, Judge Shattuck issued a search warrant to "any Federal law enforcement officer" for the premises known as "1322 Paintersville-New Jasper Rd, Xenia, Ohio, a Two Story Farm House, located approximately *459 1 mile off of Paintersville-New Jasper Rd, the only access being a dirt lane." The stated objects of the search were narcotics, narcotics paraphernalia, books, records, and other fruits and instruments of the crime of distribution of narcotics. At the time that the officers executed the warrant, Agent Brawner identified himself to Ms. Harp, explained the presence of the officers, and served her with a copy of the warrant. Agent Brawner also advised Ms. Harp of her rights. The officers quickly established that petitioner was not in the residence. However, Ms. Harp told Agent Brawner that she believed petitioner was somewhere on the premises. For their personal safety, the officers then tried to locate petitioner and otherwise secure the premises inside and out. While surveying the grounds, Deputy John Prugh of the Greene County Sheriff's Office (Deputy Prugh) entered a red barn on the premises. Inside the barn was a black and white Oldsmobile. Without entering the vehicle, Deputy Prugh observed what he believed was a large quantity of marijuana inside the vehicle. Deputy Prugh reported his observations to Agent Brawner. The search inside petitioner's residence resulted in *460 the discovery of 400.2 grams of cocaine and $ 143,286 in cash. Following Deputy Prugh's observations and the discovery of the cocaine and cash, Agent Brawner left the premises to prepare an additional search warrant and affidavit for the outbuildings and vehicles on the premises. In his affidavit for the additional search warrant, Agent Brawner restated the grounds for search as alleged in his earlier affidavit and further alleged: On 01/06/84, at approximately 11:30 P.M, affiant who is a Federal Law-Enforcement Officer, assigned to the investigation of narcotics cases, and other federal crimes, in the Southern District of Ohio, executed a search warrant for narcotics at 1322 Paintersville-New Jasper Rd, Xenia Ohio. * * * Affiant and officers executing said warrant, for the residence of 1322 Paintersville-New Jasper Rd, recovered approximately 1 Kilogram of suspected Cocaine-Hydrocloride, [sic] and approximately $ 6,000.00 in U.S. Currency, and a quantity of Marijuana, inside above residence. Upon entry, one Peggy Harp, resident, advised that one Mike Wolf, resident was outside of the residence, in or near an adjacent building. Affiant was advieed [sic] by Deputy John *461 Prugh, Greene County Sheriff's Office, that he entered a large red, with white doors, pole barn, previously described, to locate Mike Wolf. Deputy Prugh advised the affiant that located inside the barn, was a white over black Oldsmobile, bearing Texas registration OBZ191. While looking inside the vehicle, without making entry, in plain view, was green vegetation suspected of being marijuana, located inside said car. Also located on the premises, is a grain bin, a red dump truck, previously described, and a white semi-trailer, also previously described. All of these locations are capable of storing narcotics. Affiant states that possession and distribution of Cocaine-Hydrocloride, [sic] and Marijuana, are in violation Title 21, Section 841 (a)(1) U.S. Code. Judge Shattuck signed this second warrant at approximately 2 a.m. on January 7, 1984. The stated objects of the search were narcotics, narcotics paraphernalia, books, records, and other fruits and instruments of the crime of distribution of narcotics. Soon thereafter, Agent Brawner returned to the premises at New Jasper Road with the second warrant, served a copy on Ms. Harp, and instructed the other officers to execute *462 that warrant. As a result of this second search, the officers seized the 201 pounds of marijuana that Deputy Prugh had seen in the Oldsmobile parked in the barn. On January 7, 1984, following their search of the premises at New Jasper Road, Agents Brawner and Coy of the FBI arrested Ms. Harp on a narcotics violation charge. Two days later, Agent Brawner swore out a criminal complaint against petitioner and Ms. Harp. The complaint charged petitioner and Ms. Harp with violations of 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2. [1] Petitioner and his attorney voluntarily appeared at the Dayton, Ohio, office of the FBI on January 10, 1984, where petitioner was then placed under arrest. On January 18, 1984, petitioner was charged with one count of possession, with intent to distribute, of 12 ounces, more or less, of cocaine, a schedule II narcotic drug; one count of possession, with intent to distribute, of more than 100 pounds of marijuana, *463 a schedule I nonnarcotic drug; and one count of distribution of 1 ounce, more or less, of cocaine, a schedule II narcotic drug, in violation of 21 U.S.C. sec. 841(a)(1). On May 4, 1984, petitioner entered a plea of guilty, in U.S. District Court for the Southern District of Ohio, to one count of possession, with intent to distribute, of cocaine, a schedule II narcotic drug, in violation of 21 U.S.C. sec. 841(a)(1). By reason of his conviction, petitioner was sentenced to 9 years' imprisonment and 3 years' special parole. On September 25, 1989, petitioner executed an affidavit, which is part of the stipulated record in this case, admitting that he acquired 400.2 grams of cocaine, 201 pounds of marijuana, and $ 143,286 of U.S. currency in the taxable year 1983. In 1983, the value of 400.2 grams of cocaine and 201 pounds of marijuana, as stipulated by the parties, was $ 18,000 and $ 120,600, respectively. In 1983, petitioner paid estimated income tax for 1982 and 1983 in the respective amounts of $ 232 and $ 1,200. Petitioner is subject to self-employment tax on any unreported income for 1983. OPINION Petitioner contends that the searches of the premises at New Jasper Road violated *464 his rights under the Fourth Amendment to the U.S. Constitution. Petitioner argues that the search warrants signed by Judge Shattuck were defective because the affidavits supporting them contained false testimony. Petitioner's primary argument is that Agent Brawner fabricated his statement, in the initial affidavit, that "After being advised of her [Vicki Toms] constitutional rights by Dets. Clemmer and Gentry, an interview was conducted. Toms admitted that she picked up the cocaine, at an address near Xenia, Ohio." [2]
Petitioner also contends that, if the search warrants are defective, the evidence obtained as a result of the searches must be excluded. Petitioner seems to argue that exclusion of this evidence would invalidate respondent's deficiency notice because respondent used this evidence to determine petitioner's 1983 income tax *465 deficiency. In the alternative, petitioner seems to argue that exclusion of this evidence shifts to respondent the burden of coming forward with evidence to establish the existence and amount of any deficiency. Petitioner further seems to argue that respondent has not met this burden. [3] We disagree with each of these contentions. Most of the evidence and the arguments bear on whether petitioner's constitutional rights were violated. However, we will avoid deciding a constitutional question where the case may be decided on other grounds. Kessler v. Commissioner, 87 T.C. 1285, 1293-1294 (1986), affd. without published opinion 838 F.2d 1215 (6th Cir. 1988). Inasmuch as we decide that petitioner *466 is not entitled to the remedies he seeks, we do not decide whether petitioner's constitutional rights were violated. For the purposes of this opinion, we assume that petitioner's constitutional rights were violated. The exclusionary rule is a judicial remedy created to deter violations of the Fourth, Fifth, or Sixth Amendments to the U.S. Constitution. See United States v. Calandra, 414 U.S. 338, 348, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974); Jones v. Commissioner, 97 T.C. 7, 19 (1991). Under the exclusionary rule, otherwise admissible evidence may be excluded to deter future violations of individual constitutional rights. Jones v. Commissioner, supra at 19. However, the Fourth Amendment does not require evidence to be excluded where there is little or no potential for deterring law enforcement officials from engaging in future constitutional violations. Houser v. Commissioner, 96 T.C. 184, 196 (1991); see also United States v. Calandra, supra at 347-348. In considering whether to apply the exclusionary rule in a civil proceeding, the court must balance the societal costs of losing probative evidence *467 against the potential deterrent effect on unconstitutional conduct by law enforcement officials of excluding the evidence. United States v. Janis, 428 U.S. 433, 454, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976); Morgan v. Commissioner, T.C. Memo 1992-362. In making this analysis, the court should consider whether the challenged use of the evidence falls outside the government agents' "zone of primary interest" at the time they violated the individual's constitutional rights. United States v. Janis, supra at 458. The court should also consider whether the government agents acted in bad faith in obtaining the evidence. United States v. Leon, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). Although Federal District Courts have applied the exclusionary rule in civil tax cases, see Vander Linden v. United States, 502 F. Supp. 693 (S.D. Iowa 1980); United States v. Blank, 261 F. Supp. 180 (N.D. Ohio 1966), we have never, subsequent to the Supreme Court's decision in United States v. Janis, supra, excluded probative evidence because the taxpayer's constitutional rights were violated in obtaining it. Jones v. Commissioner, supra at 18-19; *468 see also Houser v. Commissioner, supra; Vallone v. Commissioner, 88 T.C. 794 (1987). Nevertheless, we have left open the possibility that we might apply the exclusionary rule, on the ground that the Commissioner's agents had violated the taxpayer's constitutional rights under the Fourth Amendment, in an appropriate case in which the purpose of the rule would be served. See Jones v. Commissioner, supra at 27 n.8. In Jones, we held that the exclusionary rule did not necessarily bar evidence obtained as a result of misconduct by agents of the Commissioner. In Jones, the taxpayers argued that the Commissioner's agents violated their constitutional rights by conducting a criminal investigation under the guise of a civil audit. Id. at 26. In concluding that the exclusionary rule would not be an appropriate remedy, we noted that significant costs are incurred by the exclusion of probative evidence from a proceeding to determine the taxpayers' liability for tax. Id. at 27. We stated that "This cost is not warranted here due to factors of remoteness and unsuitability *469 of the sanction as it relates to the violation of the rights and the use of the fruits of such violation." Id.
In petitioner's case, any violations of petitioner's constitutional rights were committed by Federal and State government officials outside of respondent's control, and with no participation therein by respondent's agents. There is no evidence that the government agents who conducted the searches were concerned with petitioner's tax liability at the times they may have violated petitioner's constitutional rights. Under these circumstances, application of the exclusionary rule would have little or no deterrent effect. In view of the substantial societal costs of excluding the probative evidence of petitioner's illegal unreported income, application of the exclusionary rule would not be appropriate here. Petitioner also misses the point in arguing that application of the exclusionary rule here would help his case. His argument ignores legal precedent and demonstrates a clear misunderstanding of the legal principles previously articulated and applied by this Court. Ordinarily, we do not look behind a deficiency notice to examine the evidence used by the Commissioner *470 to determine the deficiency. Jones v. Commissioner, supra at 18; Vallone v. Commissioner, supra at 806. The reason for this rule is that Tax Court proceedings are de novo; we determine the taxpayer's liability for tax on the basis of admissible evidence presented to this Court, not of the Commissioner's findings set forth in the deficiency notice or answer. Jones v. Commissioner, supra at 18. Despite this general rule, we will look behind the deficiency notice where there is substantial evidence that, in determining the deficiency, the Commissioner acted unconstitutionally, or where the case involves unreported illegal income and the Commissioner has introduced no substantive evidence to support the deficiency determination. Even on the rare occasion where we look behind the deficiency notice, the Commissioner's use of excluded evidence to determine the deficiency does not invalidate the notice. [4]Graham v. Commissioner, 82 T.C. 299, 310-311 (1984), affd. 770 F.2d 381 (3d Cir. 1985). *471 Petitioner's apparent argument that the exclusionary rule, if applied, would render respondent's statutory notice invalid, is contrary to our express holding in Graham. Petitioner does not argue that his case is distinguishable from Graham or that this Court incorrectly decided Graham and that the Court should now overrule Graham. In fact, petitioner's case is not distinguishable from Graham, and we can think of no reason why we should depart from our holding therein. It continues to be our view that the Commissioner's use of evidence obtained in violation of the taxpayer's constitutional rights, to determine a deficiency in income tax, does not invalidate the statutory notice of deficiency. Petitioner's alternative argument, that application of the exclusionary rule shifts the burden of coming forward to respondent, and that respondent has not met this burden, is also without merit. Even if respondent's determination should no longer be entitled to a presumption of correctness, the record in this case sustains our conclusion that respondent has met the burden of coming forward with evidence sufficient to establish the existence and amount of petitioner's *472 deficiency. In presenting his argument, petitioner either forgot about his September 25, 1989, affidavit, or he failed to recognize its significance. The admissions in petitioner's affidavit, coupled with his stipulation of the value of the property seized, and his income tax return for 1983, are independent evidence upon which we may determine a deficiency in his 1983 income tax. See Graham v. Commissioner, supra at 310. The matters admitted in these documents are credible evidence that petitioner has not challenged, and petitioner does not otherwise challenge the deficiency and additions to tax. In these circumstances, we hold that petitioner is liable for the deficiency and additions to tax asserted in respondent's answer. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. The criminal complaint against Ms. Harp was dismissed on Jan. 25, 1984.↩
2. Petitioner also appears to argue that his constitutional rights were violated when Deputy Prugh entered the red barn at New Jasper Road prior to issuance of the second warrant.↩
3. On brief, petitioner limited his argument to whether the exclusionary rule should be applied. However, we infer from petitioner's argument that he seeks either to invalidate the deficiency notice or shift the burden of coming forward to respondent by application of the exclusionary rule.↩
4. This holding closely follows the well-settled rule that a grand jury indictment based on evidence obtained in violation of the defendant's constitutional rights is nonetheless valid. See United States v. Calandra, 414 U.S. 338, 346, 38 L. Ed. 2d 561, 94 S. Ct. 613↩ (1974).